JUDGE SULLIVAN

# 11 CIV 6505

Susan Davis
Bruce Levine
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, NY 10036
(212) 563-4100
sdavis@cwsny.com
blevine@cwsny.com

Attorneys for Plaintiffs

*SEP 19 2011
U.S.D.C. S.D. N.Y.
CASHIERS*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

PATRICIA KANE, WENDY BRAITHWAITE,
and MAUREEN EISELE,

                       Plaintiffs,

    - against -

NEW YORK STATE NURSES ASSOCIATION,
TINA GERARDI, KAREN BALLARD, J.
HOWARD DOUGHTY, EILEEN DUNN, MARY
FINNIN, MIMI GONZALEZ, WINIFRED
KENNEDY, ELIZABETH MAHONEY, and
JOSÉ PLANILLO,

                       Defendants.

:    Case No.:

:    **COMPLAINT**

--------------------------------------------------------------------x

## INTRODUCTION

1.    With collective bargaining agreements covering over 20,000 nurses with major health care industry employers open for months because the incumbent leadership of the New York State Nurses Association ("NYSNA") has failed to re-negotiate them, and with many more rank-and-file nurses facing enormous health benefit reductions due to that same leadership's ill-advised decisions, NYSNA is in crisis. In the midst of this crisis, on August 24, 2011, NYSNA held a regularly scheduled election of officers and members of its governing Board of Directors. Plaintiff Patricia Kane, who has worked for decades to bring democratic and

00191970.DOC.4

electoral reform to NYSNA, and her entire slate of candidates, swept to a resounding victory over the incumbent leadership and their supporters in the election.

2.      Faced with the end of their entrenched regime, many of the incumbent officers, directors and top professional staff of NYSNA have retaliated against Kane by consolidating a legally baseless internal disciplinary process with an equally baseless election protest filed by the losing candidates (who are aligned with the entrenched leadership), and using the pendency of the protest process as a pretext for denying Kane and her slate the offices they won in the election.

3.      NYSNA is both a labor union representing registered nurses employed by hospitals and health care facilities and a professional association of registered nurses.  As such, NYSNA admits to membership both management/supervisory nurses and rank-and-file bedside nurses, who make up the vast majority of its membership.  Approximately 97 percent of NYSNA members are rank-and-file nurses who work at the bedside in acute care and other facilities. Kane and her slate are all rank-and-file nurses.

4.      NYSNA, for decades, has been led by a cadre of professional staff and elected officers who have neglected the needs of collective bargaining members.  NYSNA's internal body dedicated to its collective bargaining functions, its Delegate Assembly, lacks power to direct union policy.  That responsibility has become the exclusive province of senior staff and its Chief Executive Officer—who answers to NYSNA's Board and takes no direction from the Delegate Assembly.  Among other things, this entrenched group has engaged in an ongoing pattern of retaliation against rank-and-file nurses who have fought to make the association better serve the needs of the entire NYSNA membership.

5.      NYSNA was a founding affiliate (*i.e.*, local union) of United American Nurses ("UAN"), AFL-CIO, a national union representing registered nurses until its merger into a successor union, National Nurses United ("NNU") in 2009.  Four years ago, the same NYSNA leadership that is pursuing disciplinary charges against and refusing to seat Kane and her slate brought internal union disciplinary charges against rank-and-file nurses who had formed a committee to protest the NYSNA Board's decision to disregard the vote of its collective bargaining members and disaffiliate from its parent union, UAN.  When litigation was threatened, NYSNA dropped the disciplinary action against the rank and file nurses.  The litigation was settled with NYSNA agreeing to various democratic measures.

6.      True to form, on August 23, 2011, NYSNA once again brought internal disciplinary charges against rank-and-file nurses, including Kane and her entire slate, who had exercised their rights under Title I and Title IV of the LMRDA to criticize NYSNA's incumbent leadership, decry NYSNA's failure to negotiate successor collective bargaining agreements, speak out against NYSNA's having allowed the union nurses' health benefits to be slashed, and seek elective office in order to reform their union.  While Plaintiff Kane and her slate were overwhelmingly elected in NYSNA's August 24 election, NYSNA, in direct violation of Sections 101(a) and 609 of the LMRDA, is now pursuing frivolous disciplinary charges in conjunction with baseless election protests, as an unlawful pretext for refusing to announce the results of the election and seat the winning candidates.

7.      In particular, NYSNA is pursuing dual unionism claims—an offense that is completely inapplicable here because Kane has not sought to displace NYSNA's collective bargaining rights—and a defeated candidate aligned with NYSNA's entrenched regime has protested the election on the singular ground that Kane consulted an attorney retained by UAN's

successor union *solely* to ensure that both her own slate and NYSNA complied with Title IV of the LMRDA in the election process.  As a matter of law, seeking such counsel does not violate federal labor law and cannot serve as a predicate for union discipline or a basis to ignore NYSNA's By-Laws and disregard the results of the election.  The charges and protest represent completely baseless, retaliatory and politically-motivated attacks on Kane and her slate.

8.     In addition to acting to thwart the election process, the incumbent leadership has also responded to the threat posed by union nurses seeking democracy and reform in NYSNA by attempting to amend NYSNA's By-Laws to prevent nurses who are members of its collective bargaining arm—the Delegate Assembly—from also serving as officers on NYSNA's governing Board of Directors, in violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. § 411, and Section 401(e) of the LMRDA, 29 U.S.C. § 481(e).

9.     Finally, less than one week after Kane and her slate were elected, and immediately after the incumbent nurse leadership and their supporters were all defeated in the local union election, NYSNA's incumbent leadership scheduled a vote to take place on September 21, 2011 to extend until 2014 NYSNA CEO Tina Gerardi's lavish employment contract, which does not expire until 2012.  Gerardi has already requested, and the Board in executive session had approved, life-time retiree health benefits for Gerardi, at an exorbitant cost, even if she leaves NYSNA to work for another employer.  The entrenched Board majority forced a vote and approved this imprudent and inexplicable windfall, just as it is seeking to do on the contract extension, without providing and refusing requests for the relevant information that would be required to evaluate the proposed new terms for Gerardi's contract.

10.     The current Board majority is also poised to give final approval to a multi-million dollar real estate transaction, opposed by the newly elected leaders, at a time when

NYSNA's resources should be devoted to negotiating the scores of open collective bargaining agreements covering more than 22,000 of NYSNA's approximately 37,000 collective bargaining members and protecting the union nurses who face drastic cuts in their benefits under the terms of a recent arbitration award.  1

    11.  Based on the foregoing, and as more fully set forth below, plaintiffs bring this action under Section 102 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C.§ 412, to enjoin NYSNA from violating the democratic rights of all NYSNA members to freely participate in the affairs of NYSNA under Section 101(a) of the LMRDA and to be free of unlawful discipline for exercising those rights under Sections 101(a) and 609 of the LMRDA, 29 U.S.C. §§ 401(a) and 529.  Plaintiffs also seek to enjoin the unlawful By-Law revision that would prevent union nurse leaders from also sitting on NYSNA's Board of Directors, to remedy breaches of fiduciary duty by the incumbent staff and leadership under Section 501 of the LMRDA, 29 U.S.C. § 501 and New York State Labor Law Section 722, and to require NYSNA to comply with its own By-Laws and seat the winning candidates at its upcoming membership meeting.

## JURISDICTION AND VENUE

    12.  This Court has jurisdiction over this matter pursuant to Sections 102 and 609 of the LMRDA, (29 U.S.C. §§ 412 and 529), 28 U.S.C. § 1331, and 29 U.S.C. § 501.  This court has supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

    13.  Venue is appropriate in this district pursuant to 29 U.S.C. § 412 and 28 U.S.C. § 1391, because the violations alleged herein took place in this district and defendant NYSNA maintains a principal place of business in the Southern District of New York at 120 Wall Street, 23rd Floor, New York, New York 10005, and represents members employed in this district.

## PARTIES

Plaintiffs

14.     Plaintiff Patricia Kane has been at all times relevant to this action a member of NYSNA, a New York not-for-profit corporation and a "labor organization" within the meaning of Sections 3(i) and (j)(5) of the LMRDA, 29 U.S.C. § 402(i) and (j)(5).  She is employed as a registered nurse at a hospital represented for collective bargaining by NYSNA.

15.     Plaintiff Kane is a resident of Staten Island, New York.  In the 2011 NYSNA officer election, Kane was elected Treasurer, winning 50.9% of the votes cast in a three-way field.  She has been a registered nurse since 1983 and is currently employed at Staten Island Hospital, New York as a staff nurse in the open heart surgery operating room.  Kane has been a member of NYSNA since 1986.  She currently serves as Director-at-Large on the NYSNA Board of Directors and previously served on the NYSNA Council on Legislation.  Kane is a delegate to her local unit, was the president of her local unit for a number of years, and is a long-standing activist who has fought for democratic and electoral reforms in NYSNA.

16.     For more than a decade, Plaintiff Kane has been an outspoken voice of dissent within NYSNA.  She has made herself known to NYSNA's membership and its leadership as a knowledgeable and empowered member who has worked tirelessly to make sure that NYSNA represents the interests of its rank-and-file collective bargaining members.  She has agitated for reforms designed to make NYSNA responsive to its collective bargaining membership, been a consistent and outspoken advocate of NYSNA's complying with the requirements of the LMRDA in the conduct of its elections, and has worked for decades to have NYSNA run transparent and lawful elections that reflect the will of NYSNA's members.

17.     Plaintiff Wendy Braithwaite is a resident of the Bronx, New York, and has been a member of NYSNA since 2004.  She is employed as a nurse at Einstein Medical Center in the Bronx, New York.

18.     Plaintiff Maureen Eisele is a resident of Nanuet, New York, and has been a member of NYSNA since 1984.  She is employed as a nurse at Montefiore Medical Center in the Bronx, New York.

Defendants

   NYSNA

19.     Defendant NYSNA is New York's largest union representing registered nurses, with approximately 37,000 members.  In addition to union registered nurses who serve at the bedside in acute care hospitals and other facilities, NYSNA also admits to membership nurses in management and supervisory positions in these same facilities, as it is also a professional association.  Historically, NYSNA has not been responsive to its members covered by collective bargaining agreements even though more than 97 percent of NYSNA's membership, including Kane and her slate, are covered by collective bargaining agreements.  NYSNA's top staff executive, Tina Gerardi, previously served as an executive of the Healthcare Association of New York State, whose hospital and health care members are the employers of NYSNA's collective bargaining members, and before that as director of clinical services, a managerial and supervisory position, at the Iroquois Healthcare Consortium.

20.     The overwhelming majority of NYSNA's collective bargaining members lives or resides in or around the New York City metropolitan area.  NYSNA maintains offices at 11 Cornell Road, Latham, NY 12110 and 120 Wall Street, New York, NY 10005.

21.     Under its By-Laws, NYSNA is governed by a Board of Directors comprised of five officers and eight directors-at-large.  Officers and directors serve two-year

- 7 -

terms.  Every odd-numbered year, NYSNA members elect a President-Elect, Treasurer and four directors-at-large.  Although Title IV of the LMRDA requires local unions like NYSNA to hold elections every three years, the President-elect, after serving a two-year term, becomes President for a two-year term.  In even-numbered years, NYSNA members elect a Vice-President, Secretary and four directors-at-large.  Pursuant to Article XIV of its By-Laws, NYSNA conducts its officer elections by mail ballot.  Because there is no limitation on who can vote for or be elected to NYSNA's officer positions or its Board of Directors, NYSNA allows managers and supervisors of registered nurses, including those who work at facilities where NYSNA represents rank-and-file nurses in collective bargaining, to sit on its Board of Directors.

22.     Tina Gerardi is the Chief Executive Officer of NYSNA.  As such, she reports to NYSNA's Board of Directors and is responsible for implementing the policies adopted by the Board pursuant to its By-Laws.  The Delegate Assembly, the body within NYSNA which supposedly represents the interests of nurses covered by labor agreements, has no substantive authority in NYSNA's bylaws or governing documents; it is effectively powerless.  In contrast, Gerardi exercises substantial decision-making authority in NYSNA.  By virtue of her position and the decision-making authority that she has assumed and exercised, Gerardi owes a fiduciary duty to NYSNA.

23.     Defendants Karen Ballard, J. Howard Doughty, Eileen Dunn, Mary Finnin, Mimi Gonzalez, Winifred Kennedy, Elizabeth Mahoney, and José Planillo are members of the Board of Directors of NYSNA.  By virtue of their position, Ballard, Doughty, Dunn, Finnin, Gonzalez, Kennedy, Mahoney, and Planillo owe a fiduciary duty to NYSNA.

## FACTUAL BACKGROUND

NYSNA's Unique Status as both a Professional Association and a Labor Organization

24.     The fact that NYSNA is attempting to preclude union leaders from serving as officers or directors on its governing Board is important background for the issues raised in this complaint.  Contrary to the express requirements of Title IV of the LMRDA, as interpreted by the Department of Labor, *see* 29 C.F.R. § 452.47, NYSNA allows supervisors and managers to sit on its governing board.

25.     Under federal labor law, professional organizations of nurses must insulate their collective bargaining functions by having all collective bargaining-related matters addressed only by collective bargaining representatives.  In 1988, in order to insulate its collective bargaining program from its Board of Directors, which included managers and supervisors, NYSNA established a Delegate Assembly to function as the leadership council for its collective bargaining members.  In Policy 2-6 ("Policy: Legal and Fiduciary Obligations"), adopted in 1989, NYSNA stated that

> [R]ank and file employees whom the association represents must have full and complete freedom to determine their own goals in collective bargaining.  Accordingly, the board of directors cannot participate in or influence the conduct of the collective bargaining program – including (but not limited to) such matter as elections, grievances, arbitrations or contract negotiations.

It further provides that "[t]he board must scrupulously avoid any discussion of collective bargaining matters[.]"

26.     Notwithstanding the foregoing, NYSNA has often ignored these requirements over the years.  Among other things, in 2007, NYSNA had its Board of Directors, rather than its Delegate Assembly, make the decision to ignore the vote of its rank-and-file nurses and disaffiliate from UAN.  Currently, as detailed below, NYSNA is violating its

insulation obligations by having its upcoming non-insulated annual membership meeting (which, given its inaccessible location in Niagara Falls, undoubtedly will be dominated by nurse supervisors and managers) vote on an unlawful By-law amendment that will preclude the leadership of the Delegate Assembly (*i.e.*, the union nurse leaders) from also serving on NYSNA's governing Board of Directors.  Upon information and belief, approximately 300 of approximately 37,000 NYSNA members will be able to travel to Niagara Falls to vote on this unlawful amendment.

27.     Because NYSNA's Board is precluded under the insulation doctrine from deciding or dealing with any matters pertaining to collective bargaining, and because NYSNA's Delegate Assembly lacks any decision-making authority under NYSNA's governance structure, policy decisions have devolved to NYSNA's CEO, who answers to the Board and not the Delegate Assembly.  The result has been patently undemocratic governance.

28.     Additionally, because NYSNA is a labor organization governed by Title IV of the LMRDA, 29 U.S.C. § 481, *et seq.*, all collective bargaining members must be permitted to vote for and seek election as members of the NYSNA Board of Directors under Section 401(e) of the LMRDA, 29 U.S.C. §481(e).  Not only has NYSNA violated Title IV by permitting managers and supervisors to serve on its Board of Directors, but its recent attempt to preclude the collective bargaining leadership on the Delegate Assembly from also serving on the Board of Directors runs directly contrary to Title I of the LMRDA.

NYSNA's Effort to Squelch Dissent By Rank-and-File Nurses

The Prior Internal Union Disciplinary Charges

29.     In 1999, members of NYSNA and several other state nurses associations joined together and formed UAN to act as their national union.  UAN was an autonomous national labor organization affiliated with the AFL-CIO.  UAN provided financial, technical,

educational and other support for NYSNA's collective bargaining and organizing efforts.  In 1999, NYSNA's Delegate Assembly, the elected body comprised of NYSNA's collective bargaining members, recommended that NYSNA affiliate with UAN.  Subsequently, NYSNA effectuated the affiliation.

30.     In 2007, CEO Gerardi and NYSNA senior management commenced a campaign to have NYSNA disaffiliate from UAN, which subsequently had become affiliated with the AFL-CIO and had become a staunch supporter of NYSNA's collective bargaining members.  NYSNA's Board of Directors then authorized a poll of the NYSNA collective bargaining membership on whether NYSNA should disaffiliate from UAN.  The NYSNA membership, by a 60% margin, opposed NYSNA's disaffiliation from its national union.  Nonetheless, on December 17, 2007, the NYSNA Board of Directors, blatantly ignoring the insulation requirement of federal labor law, voted to disaffiliate from UAN.

31.     Plaintiff Kane was a chief and vocal opponent of the NYSNA Board's extraordinary move to sever NYSNA's affiliation with UAN, its parent union, despite the clear preference of the union membership that NYSNA remain affiliated.

32.     Kane openly and vocally resisted the efforts by NYSNA CEO and former nurse manager Gerardi and others to end NYSNA's affiliation with its national union.  Kane and others created an internal union caucus, "Nurses for Unity," that conducted a vigorous campaign opposing the undemocratic process by which NYSNA had pursued disaffiliation.

33.     Gerardi and several of her allied Board members and top staff launched an aggressive campaign to discredit the position of Nurses for Unity and its leaders, including Kane, and to silence the dissent of Kane and other Nurses for Unity members.

34.    In 2007, as part of this campaign to suppress dissent, NYSNA instituted internal union disciplinary charges against Kane and twenty-two other Nurses for Unity members as a direct result of their public opposition to the NYSNA Board's unlawful decision to disaffiliate from its parent union, UAN.  NYSNA's disciplinary charges against Kane and the other Nurses for Unity members were accompanied by an aggressive campaign of intimidation. NYSNA not only published the charges in the *New York Nurse,* NYSNA's official publication (an unprecedented action), but also encouraged other members to file more charges against Kane and other Nurses for Unity members.

35.    In November 2007, and only after Nurses for Unity threatened litigation for the retaliatory charges, the NYSNA Board dismissed the complaints against the rank-and-file Nurses for Unity members, and in doing so conceded that the Nurses for Unity members could not be disciplined because the wrongful actions alleged were protected by the free speech provisions of the LMRDA.  The dismissal letter went on, however, to express the NYSNA Board's "outrage" over the behavior of the Nurses for Unity.  Kane and other Nurses for Unity construed the letters as reprimands for their dissent, despite the dismissals.

36.    But, on the same day it dismissed the discipline charges, NYSNA acted to punish two past Board members and one present Board member, each of whom had opposed disaffiliation and participated in the Nurses for Unity campaign.  In particular, NYSNA barred all three from appointment to any NYSNA board, committee, council, task force or award or for nomination for any position in the American Nurses Association.  It also barred the sitting Board member from any executive sessions of the Board and removed her from sitting on the Board's finance committee.  In imposing this discipline, NYSNA afforded none of the three any due process.

37.     The disciplinary action and the retaliation against the dissenting Board members were taken in order to chill any dissent and stop these nurses from continuing to advocate against NYSNA severing its relationship with its national union.

The *Holloman v. NYSNA* Litigation and Settlement

38.     Faced with no alternative but to commence legal action against NYSNA for its unlawful retaliatory disciplinary charges, three past and present board members who supported Nurses for Unity sought and received assistance from UAN to file a lawsuit against NYSNA under Title I of the LMDRA.  That case, *Holloman v. NYSNA*, Case No. 08 CV 00211 (LAP) (S.D.N.Y.), was filed on January 10, 2008.

39.     As a result of the lawsuit, NYSNA eventually entered into a court-ordered settlement agreement.  Under the settlement, NYSNA was required to permit Nurses for Unity to publish a column in NYSNA's official newspaper outlining the dissidents' goals and views, and to conduct a forum at its next membership meeting on issues involving the leadership and control of the collective bargaining program and the insulation doctrine.

40.     Subsequent to these events, in 2009, NYSNA's former parent union, UAN, merged with the California and Massachusetts Nurses Associations to form a new national union, NNU, AFL-CIO.  As a result of the merger, NNU became the legal successor to UAN and inherited UAN's entire treasury, which consisted of the dues monies of then-current and former UAN members.  Additionally, the former affiliated locals of UAN became NNU affiliated locals, and all of UAN's members became members of NNU.

The 2007 NYSNA Election

41.     In its 2007 officer election, NYSNA contracted with Survey & Ballot Systems ("SBS") to conduct the election.  At that time, Kane, who was working on the election campaign of another NYSNA member, noticed that SBS was conducting the mail ballot election

in Minnesota, more than 1,000 miles away from NYSNA's principal offices in Latham, New

York, and New York City.  A number of firms in the New York City area, including the

American Arbitration Association and Election Services Solutions, routinely provide such

services to labor unions conducting elections under Title IV of the LMRDA.

      42.     Section 401(c) of the LMRDA, 29 U.S.C. §481(c), gives any candidate in

a union election governed by Title IV of the LMRDA the right to have an observer at the polls

and at all phases of the balloting process.  Kane contacted Gerardi and asked how candidates

could exercise their statutory rights to observe an election process occurring more than 1,000

miles away.  Gerardi advised Kane that NYSNA (in blatant violation of Title IV of the LMRDA)

had no procedures for permitting candidates to observe the election.

      43.     In the aftermath of the 2007 election, Kane and members of Nurses for

Unity filed a complaint with the U.S. Department of Labor, Office of Labor-Management

Standards ("OLMS") protesting various aspects of the election process, including the inability of

observers to watch the various phases of an election occurring in Minnesota.  In September,

2008, the OLMS issued a decision finding that NYSNA's decision to have the election

conducted 1,000 miles away was unlawful.  It stated:

> The LMRDA permits candidates to have observers at every phase
> and level of the tallying process.  *See* 29 CFR 452 107.  *This right,*
> *however, is violated when, as in this case, the tally is conducted so*
> *far away from the members or under such circumstances that make*
> *it virtually impossible to observe all phases of the tally process.*

(Emphasis added).

      44.     Following the 2007 election, and even after Kane became an elected

member of NYSNA's Board of Directors, she continued to challenge the legal infirmities in

NYSNA's election practices.  Her reform efforts have continued to date, despite the open

hostility that has been directed at her by certain entrenched members of NYSNA's top staff and elected leadership.

> The 2010 NYSNA Election

45.     Notwithstanding the Department of Labor's finding that the conducting of NYSNA's mail ballot election in Minnesota violated Title IV's requirement that candidates be permitted to observe the conduct of the election, NYSNA again used SBS to conduct its 2010 officers election.

46.     On July 26, 2010, Kane filed a protest with NYSNA's Election Committee.  Kane alleged that NYSNA resources were being used to promote and support one group of candidates, those opposing her and her slate of candidates, in violation of NYSNA's By-Laws and the LMRDA.  Kane also alleged that the resources of another labor organization with which NYSNA had become affiliated, the National Federation of Nurses (NFN), was used to disseminate campaign literature attacking Kane and her allies.

47.     Under Article XIV Section 4 of NYSNA's By-Laws, election results "shall be announced at the annual meeting."  Under Article XIV Section 7 of NYSNA's By-Laws, the term of office of officers or directors "shall commence at the adjournment of the annual membership meeting…and shall continue for the term specified or until their successors are elected."

48.     Notwithstanding the foregoing, Kane's protest of the 2010 NYSNA election was not resolved at the time of the 2010 membership meeting.  Still, the results of the election, as certified by SBS, were announced at that meeting and all of the officers elected – including those whom Kane alleged were unlawfully supported by NYSNA and NFN resources – were permitted to take office.  Now, as set forth below, and contrary to what occurred in 2010, NYSNA has decided to ignore this precedent and the requirement in its own By-Laws that the

winning candidates be seated at the annual membership meeting *solely* because Kane and her slate of dissidents were elected to office in the face of the opposition of NYSNA's top staff and anti-union leadership.

<u>The 2011 NYSNA Election and Current Internal Union Disciplinary Charges</u>

49.     In August, 2011, NYSNA members elected the President-Elect (whose term of office as President commences in 2013), Treasurer and four directors-at-large.  NYSNA again used SBS to conduct the election.  Kane ran for Treasurer as part of an anti-incumbent slate of candidates known as "New York Nurses for Staffing, Security and Strength."  During the election, Kane, once again, publicly challenged NYSNA's failure to adequately represent the membership.  Kane and her fellow slate members spoke to thousands of members, disseminated literature and conducted a vigorous campaign against NYSNA's incumbent regime.  At the same time, Kane wrote numerous times to NYSNA protesting various unlawful aspects of how it was conducting the election.

50.     The ballots were tallied by SBS on August 24, 2011.  NYSNA's 2011 membership meeting is scheduled to begin on September 22, 2011 in Niagara Falls, New York.

51.     Notwithstanding NYSNA's numerous, blatant violations of Title IV of the LMRDA, Kane and her entire slate won the election by a substantial margin.  In particular, Kane was elected by 50.9% of the vote in a three-way field, Patricia DiLillo was elected President-elect by 49.5% in a three-way field and slate members Anthony Ciampa, Veronica Richardson, Grace Otto and Verginia Stewart were elected as directors-at-large, earning 51% of the vote in a twelve-way field.  Slate member Jacqueline Gilbert was elected to the Nominating Committee's Southeastern Region as well.

52.     In the midst of the election, on July 29, 2011, Kane received a letter from the NYSNA Election Committee informing her of a protest claiming that she had violated a

NYSNA rule prohibiting the use of resources from an outside labor organization to "promote" or "oppose" a candidate in the NYSNA election.

53.     At no time has Kane ever used any third party funds or resources to promote her candidacy or oppose others' candidacies.

54.     Specifically, NYSNA's letter claimed that Kane and the members of her slate, in violation of NYSNA's internal rules, were receiving legal counsel from the law firm of Cohen, Weiss and Simon LLP ("CWS"), which had served as general counsel to UAN and now serves as counsel to UAN's successor union, NNU.  The NYSNA Election Committee demanded a response from Kane, including documents relating to the provision of legal services by CWS, by August 5, 2011.

55.     On August 3, 2011, Kane requested, but has still not received, a copy of the election protest to which she was required to respond.  She also asked that she be given an extra week to respond to the protest.  Instead, Gerardi told Kane that the Election Committee would consider her request for additional time at its next meeting on August 11.  To date, Kane has not received a response on her extension request or a copy of the election protest.

56.     NYSNA's protest against Kane, and NYSNA's mandate that she respond to it in a matter of days, came in the critical final week in Kane's campaign, and after several months in which Kane had repeatedly and vocally challenged NYSNA's failure to represent its collective bargaining membership, as well as its failure to comply with the LMRDA in the conduct of the election.

57.     Like she did in 2007, and in this case faced with NYSNA again running an election that blatantly violated Title IV of the LMRDA, Kane sought legal assistance in protecting her rights guaranteed under the LMRDA.  Because UAN, NYSNA's former parent

- 17 -

union, had merged into NNU, and because NNU had inherited UAN's treasury, which was funded by the dues monies of its former members, including plaintiffs, Kane turned to NNU's counsel, who was UAN's former general counsel, for assistance in protecting and enforcing her legal rights under Title I and IV of the LMRDA.  She neither sought nor received any other assistance or advice from CWS.

58.     Faced with NYSNA's not extending her time to respond on August 5, Kane responded to the protest, even though NYSNA never sent her a copy of it.  She provided NYSNA with incontrovertible evidence demonstrating that that she had solicited legal advice *solely* for the purpose of ensuring that NYSNA (and her own election campaign) complied with the requirements of Title IV of the LMRDA.  The evidence demonstrated that Kane *never* sought or received legal assistance to promote her campaign or oppose her opponents' campaign.  She additionally stated that she alone had sought legal counsel, and that no member of her slate even had knowledge that she had sought legal advice from CWS.  Members of her slate subsequently provided NYSNA with incontrovertible evidence confirming that they had no dealings whatsoever with CWS.

59.     Despite the absence of any factual or legal basis for the protest, it remains outstanding and has not been dismissed.

60.     On August 24 , 2011, Kane learned that NYSNA President Karen Ballard knew that election protests had been filed against Kane and her slate.  Kane asked Ballard how she was even aware of the election complaints, which had been addressed to the Election Committee.  Ballard told Kane that the election complaints were being sent to her, and that she was reading them.

61.     On August 23, even after receiving uncontroverted evidence that Kane *only* sought legal compliance advice from counsel and that no one on her slate even knew about this— and one day before the ballots were to be counted—NYSNA advised Kane *and every member of her slate* that disciplinary complaints had been addressed to the Election Committee and referred to the president, as well as the Election Committee, for appropriate action.  NYSNA also sent Kane correspondence from Susan Casadone, one of Kane's political opponents, making the allegations described above regarding Kane's alleged violations of NYSNA policy.  In her letter, Casadone raises two issues.  *First*, she claims that Kane and her slate were guilty of dual unionism by seeking legal representation from CWS, the same firm that that represented NNU and, *second*, that Kane and other elected members unlawfully chose not to disclose the presence at NYSNA facilities of an individual, Steven Toff, whom Casadone claims is an employee of the California Nurses Association/NNU.

62.     As discussed above, Kane provided incontrovertible evidence to NYSNA that CWS only provided legal compliance advice to Kane and nothing more.  With respect to Casadone's second claim, although Toff was formerly an NNU employee, he left the employ of NNU on May 31, 2011 in order to go to law school.  At no time while employed with NNU did he do any work with Kane or her slate.

63.     NYSNA's treatment of the election protests against Kane was discriminatory.  As noted above, Kane, too, had filed an election protest.  She alleged that Eileen Dunn had received improper financial and other support from NYSNA for her candidacy. Despite having made the same allegation concerning her opponent in the election, Kane's charge was not treated similarly.  NYSNA has not referred that part of Kane's election objection to the President for action under NYSNA's disciplinary procedures.

64.     Under NYSNA's "Guidelines, Policies and Procedures Re: Disciplinary Action," the Executive Committee of NYSNA's Board of Directors shall, if a majority "decides the complaint raises legitimate and substantial issues meriting further review," provide for an "impartial committee to investigate the complaint and recommend its dismissal or issuance of charges[.]"  The charged member must be advised when the impartial committee is formed and who its members are.  The impartial committee has forty days after receipt of referred charges to investigate the matter by "conduct[ing] interviews with the complainant, the member named in the complaint and any witnesses" and "prepare a written report to the Board of Directors summarizing its investigation and recommending either that the complaint be dismissed or that charges be issued[.]"  The Board of Directors then has twenty-five business days to act on the report by dismissing the complaint or issuing charges.  Should the Board determine to issue charges, a hearing must be conducted no later than forty-five business days after the decision to issue charges.

65.     By letter dated September 8, 2011, NYSNA informed Kane that an impartial committee had been formed to consider the complaint.

66.     Despite these enormous obstacles and NYSNA's pervasive denial of the rights of Kane and the members of her slate, the entire slate won the election on August 24 by a substantial margin.  As a result, combined with other present Board members who support her, Kane and her slate constitute a majority of the thirteen member board.  Faced with the prospect that their control of NYSNA is at an end and in direct violation of NYSNA's own policies and past practice, Gerardi and the NYSNA Board have taken the position that the certification of the election is "in the hands of the Election Committee," and that the Election Committee has the authority to order a re-run election.  This decision violates Article XIV, sections 4 and 5 of

NYSNA's Bylaws, which require that the candidates with the highest number of votes "shall be declared elected."  It also violates 29 U.S.C. § 482(a)(2), which requires winning candidates in an election to be seated and take office until such time as the Secretary of Labor determines that the election should be set aside.

67.     As stated, the decision by Gerardi and the NYSNA Board to disregard the express provisions of the NYSNA Bylaws, as well as the LMRDA, contrasts with how the NYSNA Board acted in response to Kane's election protests against the entrenched leadership in the 2010 election.  Unlike the Board's current posture, the Board announced the election results and declared the election of the winning candidates at its membership meeting following the election.

68.     Repeating what they did in 2007, the top staff and elected leadership of NYSNA have again fomented unfounded disciplinary complaints against Kane, as well as her slate and some supporters, in retaliation for their public and persistent dissent, with a goal of unseating them as elected leaders and stifling their free speech.  In doing so, they have created a climate of coercion and fear, which has had a chilling effect on and is reverberating throughout the collective bargaining membership of NYSNA.

69.     In fact, CEO Gerardi took the unprecedented step of *soliciting* election complaints, with a goal of unseating Kane, members of their slate, and their allies already serving on the Board.  During the 2011 election, Gerardi has repeatedly e-mailed candidates instructions as to how to file election complaints.  On one of these occasions, Gerardi advised candidates that an attorney affiliated with Kane had contacted the ballot company to ask why ballots had not been mailed out, and included in her e-mail instructions as to how to file an election complaint.  Following the tabulation of election results, results were, for the first time in

NYSNA history, published on the association's members-only intranet site, along with a notice that "[i]n accordance with NYSNA's Election Protest Procedure, all NYSNA members have the right to file post-election protests regarding any alleged improper election or post-election conduct or event within fifteen (15) days from August 25." A link was provided to the protest procedure. Additionally, NYSNA mailed members a physical copy of the election tally, along with directions on how to protest the election.

70.    NYSNA's solicitation of election complaints has had the desired effect of marshalling election complaints against Kane, her slate, and its allies. In addition to the previously-mentioned complaints filed against Kane and her slate, on September 9, 2011, NYSNA President Karen Ballard notified NYSNA Board member and slate ally Judy Sheridan-Gonzalez that she had been observed campaigning for Kane and the slate during an official NYSNA meeting, supposedly in violation of NYSNA policies. Although the complaint against Sheridan-Gonzalez was styled as an election protest, it was, as the election complaints against Kane and her slate members had been, converted into a disciplinary complaint. The result is that Kane, the charged slate members, and Sheridan-Gonzalez stand to lose not only their rightful seats on the Board, but also their membership in NYSNA and their associated right to stand for election.

NYSNA's Election Violations in the 2011 Election

71.    The 2011 NYSNA election was again marred by serious misconduct on the part of NYSNA's top staff and elected leadership. NYSNA's decision, once again, to conduct the mail ballot election in Minnesota (notwithstanding the Department of Labor's finding that this violated Title IV of the LMRDA), while making limited "webcam" observation available only in Latham, NY, made it virtually impossible for members to observe every phase of the balloting process, a right guaranteed by Title IV of the LMRDA.

- 22 -

72.     Additionally, in July 2011, in direct violation of its own published election schedule, NYSNA directed the Minnesota election agency, SBS, to mail the ballots to the members one week *after* the date listed in the schedule that had been distributed to all candidates.  It did this without notifying Kane and her slate, who had timed their own campaign mailing (to more than 20,000 members) to coincide with the arrival of the ballots on the original published date.

73.     Both before and after the mailing of ballots, NYSNA denied Plaintiff Kane's reasonable requests to have her campaign literature distributed, at her expense, in separate e-mails that were not "bundled" with the campaign literature of other candidates in a single attachment.  NYSNA also denied Kane's request that her campaign literature be sent on the dates she requested, rather than on the dates NYSNA designated.  By denying these requests, NYSNA interfered with Kane's right as a candidate under Section 401(c) of the LMRDA, 29 U.S.C. §481(c), and the rights of all NYSNA members to a fair election and a meaningful vote.

74.     NYSNA further undermined the election process by denying Kane and the members of her slate—through an eleventh-hour decision by Gerardi—the right to designate nurses who lived in Minnesota as observers to the Minnesota balloting process.  Gerardi's denial was based on the fact that Kane's observers were members of the Minnesota Nurses Association, a former UAN and current NNU local affiliate, which Gerardi unilaterally and without any basis deemed to be a "hostile" labor organization.  Gerardi's decision was contrary to NYSNA's own election rules, which expressly permit non-NYSNA members to serve as observers in the election process.

75.     Because of the prohibitive cost of flying people to and housing them in Minnesota for the entire balloting process, which SBS conducted over close to a month,

NYSNA's arbitrary and subjective disqualification of the designated observers for Kane and her slate effectively denied them their observer rights under Title IV of the LMRDA.

76.     Additionally, NYSNA repeatedly ignored observers' requests for information about the number of internet ballots cast, the manner in which the internet balloting was conducted and whether there was a verifiable paper trail for the internet ballots.  It also refused to answer the observers' questions about how to challenge particular mail and internet ballots, and refused to show observers a list of the names of eligible voters, all of which are required by regulations promulgated by the Department of Labor.

NYSNA's Unlawful By-Law Amendment

77.     In the July/August 2011 issue of *New York Nurse*, NYSNA advised of a proposed by-law amendment that will preclude any collective bargaining nurse elected to the leadership of the Delegate Assembly, NYSNA's collective bargaining arm, or to the executive committee of the Congress from also holding office on its governing Board of Directors.  A copy of the proposed amendment is attached hereto as Exhibit A.

78.     NYSNA permits supervisors and managers to hold office and serve on its Board of Directors in violation of 29 C.F.R. § 452.27, which expressly prohibits supervisors or management officials from serving as officers of labor organizations.  The proposed amendment is contrary to Section 401(e) of the LMRDA, 29 U.S.C. §481(e), which recognizes the rights of any union member to seek and hold elected office.  The proposed amendment would only preclude union leaders—those nurses elected to the Delegate Assembly—and not managers and supervisors from being elected to NYSNA's governing board.

79.     NYSNA intends to hold a vote on this by-law amendment at its upcoming membership meeting on September 22.  The 2011 membership meeting will take place at a hotel and conference center in Niagara Falls, more than 350 miles from the New York City

metropolitan area, where more than 90% of NYSNA's collective bargaining members live and work.  Because of the great cost and inconvenience of traveling to Niagara Falls, upon information and belief approximately 300 of NYSNA's almost 37,000 members are registered to attend the membership meeting.

Breach of Fiduciary Duty

Gerardi's Retiree Health Benefits Package and Contract Extension

80.   At an August 24 and 25 meeting of the Board of Directors, and confronted by election results that would create a new, reform-minded majority on the Board, NYSNA CEO Gerardi's allies among the incumbent leadership, sought an extension of her 2007 employment agreement that expires in 2012, as well as a lavish retiree health benefits package.  When a five-year contract extension was proposed, Kane immediately contended that whether Gerardi's contract should be extended was properly within the province of the newly-elected Board, not the incumbent Board, whose terms were due to expire in less than a month.  She also demanded that copies of Gerardi's current contract be provided to Board members for their review prior to having to vote on an extension.  When Kane persisted in her demand for the agreement, limited and incomplete copies of Gerardi's 2007 contract, which did not contain significant and substantive changes in compensation, health and severance benefits, were provided. Nevertheless, in an August 24, 2011 executive session meeting, the incumbent leadership approved life-time retiree health benefits for Gerardi, at an exorbitant cost, even if Gerardi leaves NYSNA to work for another employer, knowing that the newly-elected board would oppose such benefits.

81.   To avoid the results of the election, the proposed contract extension for Gerardi is scheduled to be voted on at a meeting of the incumbent Board on September 21, 2011,

a day before the membership meeting and just days before Kane and her slate are legally required to take office.

Acquisition of 40 Rector Street

82.    NYSNA's lease to office space at 120 Wall Street extends through 2013. In 2011, a sub-committee of the Board was established to review whether to renew the lease or make alternative arrangements.

83.    That sub-committee proposed that rather than renewing the lease at 120 Wall Street, NYSNA acquire the 14th floor of the office building at 40 Rector Street in downtown Manhattan.  Notwithstanding the presently depressed market for commercial real estate in New York City, the sub-committee presented the Board with no analysis of any options other than the acquisition of the 40 Rector Street property or continuation of the lease at 120 Wall Street.  The Board was advised that the assessed value of the property was substantially less than the purchase price.  That shortfall created a need for additional funding, as financing had only been contemplated at 80% of the assessed value of the property.

84.    Acquisition of the 40 Rector Street property would require a payment by NYSNA of between $4 and $5.5 million at a time when NYSNA faces substantial collective bargaining expenses, with contracts covering more than 22,000 nurses open throughout the health care industry.  Moreover, the 2012 preliminary budget previously approved by the Board did not account for the proposed transaction, nor did it account for transition costs (including, among other items, potentially hundreds of thousands of dollars in costs to break the lease at 120 Wall Street).

85.    Despite the collective bargaining and health benefits crisis facing NYSNA's collective bargaining members, as well as the absence of proper budgeting for the transaction, and facing an election in which they could have been (and were) unseated, the anti-

Kane majority on the Board of Directors is poised to authorize NYSNA to make a formal purchase offer for the 40 Rector Street property.  Kane and two other collective-bargaining nurses voiced opposition to the purchase, but the incumbent leadership has refused to hold off on taking further steps to authorize the purchase.

<u>Kane Demands that NYSNA Bring Suit to Remedy These Fiduciary Breaches</u>

86.     On August 26, 2011, Kane wrote to the Board of Directors of NYSNA and Gerardi and demanded that they confirm that NYSNA will seat the newly elected officers as required by its By-Laws and refrain from out of the ordinary financial transactions during the transition period, among other things.  On September 2, 2011, Gerardi provided an evasive response indicating that the Election Committee would continue to process the protests and making no commitments with respect to extraordinary financial transactions and the other matters raised by Kane.  On September 13, 2011, Kane wrote to the Board of Directors of NYSNA and Gerardi and demanded that NYSNA file suit for breach of fiduciary duty against Gerardi and those directors who approved Gerardi's retiree benefits and who are prepared to grant Gerardi's contract extension and approve NYSNA taking steps to acquire the 40 Rector Street property.  Additionally, by correspondence dated September 13, 2011, Kane demanded confirmation that NYSNA would honor the results of the election and that in the absence of confirmation she would file this action.  As of this date, there has been no response to Kane's demands.  Because a majority of the Board, under Gerardi's leadership and direction, approve of the efforts to squelch dissent and the challenged proposed transactions, further delay to await a response would be futile.

## FIRST CAUSE OF ACTION:
## <u>VIOLATION OF TITLE I RIGHTS AND UNLAWFUL DISCIPLINE</u>

87.     Plaintiffs repeat and reallege paragraphs 1-86 as if they are fully set forth herein.

88.     NYSNA's effort to discipline Plaintiff Kane, both through internal union disciplinary procedures and in its election protest process, and its use of factually and legally baseless complaints and protests as a pretext to deny Kane and her slate—all duly elected in NYSNA's 2011 election—violate plaintiffs' rights under Sections 101(a)(2) and (5) and Section 529 of the LMRDA, 29 U.S.C. §§ 401(a)(2), (5) and 629, which prohibit unions from retaliating against their members for exercise of free speech, require that disciplinary action comport with due process of law and prohibit a union from disciplining its members for the exercise of rights protected by the LMRDA.

89.     As a result of defendants' violations of their rights under Section 101(a) (1), (2)and (5), plaintiffs' membership rights to participate fully in the affairs of NYSNA have been adversely affected.  Defendants have acted willfully, intentionally and in reckless disregard of plaintiffs' rights.

## SECOND CAUSE OF ACTION:
## <u>MEMBERSHIP MEETING VOTING</u>

90.     Plaintiffs repeat and reallege paragraphs 1-89 as if they are fully set forth herein.

91.     NYSNA's proposed bylaw amendment, which would preclude the collective bargaining leadership from also holding office on NYSNA's governing Board of Directors, violates Title I's mandate that *all* local union members be permitted to seek elective office.  As such, it should be declared unlawful and NYSNA should be precluded from proceeding with a vote on the amendment at its upcoming membership meeting.

92.     Alternatively, rather than having such a significant bylaw amendment voted on by a fraction of NYSNA members in a non-insulated membership meeting—only those able to travel to Niagara Falls—all collective bargaining members of NYSNA should have the opportunity to vote on such a fundamental change.  Accordingly, if the bylaw is allowed to proceed to a vote, the Court should exercise its equitable discretion and require NYSNA to arrange for a mail ballot referendum to afford voting rights to those collective bargaining members unable to attend the membership meeting, which is occurring hundreds of miles away from where the majority of NYSNA union members live and work.

**THIRD CAUSE OF ACTION:**
**AGAINST DEFENDANTS GERARDI AND KAREN BALLARD,**
**J. HOWARD DOUGHTY, EILEEN DUNN, MARY FINNIN,**
**MIMI GONZALEZ, WINIFRED KENNEDY,**
**ELIZABETH MAHONEY, AND JOSÉ PLANILLO:**
**<u>BREACH OF FIDUCIARY DUTIES UNDER THE LMRDA</u>**

93.     Plaintiffs repeat and reallege paragraphs 1-92 as if they are fully set forth herein.

94.     By virtue of their positions and office, NYSNA CEO Gerardi and Defendants Karen Ballard, J. Howard Doughty, Eileen Dunn, Mary Finnin, Mimi Gonzalez, Winifred Kennedy, Elizabeth Mahoney, and José Planillo are fiduciaries of NYSNA under Section 501(a) of the LMRDA, 29 U.S.C. § 501(a).  In instigating and pushing to extend Gerardi's employment agreement as described herein, and scheduling a vote on the lavish contract one day before the newly elected Board members are seated, Defendants Gerardi and Ballard, Doughty, Dunn, Finnin, Gonzalez, Kennedy, Mahoney, and Planillo breached their fiduciary duties owed to NYSNA under Section 501(a) of the LMRDA, 29 U.S.C. § 501(a).  The prerequisites for filing suit under Section 501(b) of the LMRDA, 29 U.S.C. § 501(b) have been met.

**FOURTH CAUSE OF ACTION:**
**AGAINST DEFENDANTS GERARDI AND KAREN BALLARD,**
**J. HOWARD DOUGHTY, EILEEN DUNN, MARY FINNIN,**
**MIMI GONZALEZ, WINIFRED KENNEDY,**
**ELIZABETH MAHONEY, AND JOSÉ PLANILLO:**
**BREACH OF FIDUCIARY DUTY UNDER NEW YORK LABOR LAW**

95.     Plaintiffs repeat and reallege paragraphs 1-94 as if they are fully set forth

herein.

96.     By virtue of their positions and office, NYSNA CEO Gerardi and

Defendants Karen Ballard, J. Howard Doughty, Eileen Dunn, Mary Finnin, Mimi Gonzalez,

Winifred Kennedy, Elizabeth Mahoney, and José Planillo are fiduciaries of NYSNA under

Section 722 of the New York Labor Law.  In instigating and pushing to extend Gerardi's

employment agreement as described herein, and scheduling a vote on the lavish contract one day

before the newly elected Board members are seated, Defendants Gerardi and Ballard, Doughty,

Dunn, Finnin, Gonzalez, Kennedy, Mahoney, and Planillo breached fiduciary duties owed to

NYSNA under Section 720(2) of New York Labor Law.  The prerequisites for filing suit under

Section 725(1) of New York Labor Law have been met.

**FIFTH CAUSE OF ACTION**
**AGAINST DEFENDANTS GERARDI AND KAREN BALLARD,**
**J. HOWARD DOUGHTY, EILEEN DUNN, MARY FINNIN,**
**MIMI GONZALEZ, WINIFRED KENNEDY,**
**ELIZABETH MAHONEY, AND JOSÉ PLANILLO:**
**BREACH OF FIDUCIARY DUTIES UNDER THE LMRDA**

97.     Plaintiffs repeat and reallege paragraphs 1-96 as if they are fully set forth

herein.

98.     By virtue of their positions and office, Defendants Gerardi and Karen

Ballard, J. Howard Doughty, Eileen Dunn, Mary Finnin, Mimi Gonzalez, Winifred Kennedy,

Elizabeth Mahoney, and José Planillo are fiduciaries of NYSNA under Section 501(a) of the

LMRDA, 29 U.S.C. § 501(a).  In taking steps to approve NYSNA's acquisition of property at 40

Rector Street, without appropriate budgeting and at a time when NYSNA's resources should be directed to the expired collective bargaining agreements covering over 20,000 nurses and to the health benefit cuts that have just been implemented, and before the newly-elected Board members are seated, Defendants Gerardi and Ballard, Doughty, Dunn, Finnin, Gonzalez, Kennedy, Mahoney, and Planillo have breached their fiduciary duties owed to NYSNA under Section 501(a) of the LMRDA, 29 U.S.C. § 501(a), causing damage to NYSNA.  The prerequisites for filing suit under Section 501(b) of the LMRDA, 29 U.S.C. § 501(b) have been met.

**SIXTH CAUSE OF ACTION:**
**AGAINST DEFENDANTS GERARDI AND KAREN BALLARD,**
**J. HOWARD DOUGHTY, EILEEN DUNN, MARY FINNIN,**
**MIMI GONZALEZ, WINIFRED KENNEDY,**
**ELIZABETH MAHONEY, AND JOSÉ PLANILLO:**
**BREACH OF FIDUCIARY DUTIES UNDER NEW YORK LABOR LAW**

99.     Plaintiffs repeat and reallege paragraphs 1-98 as if they are fully set forth herein.

100.     By virtue of their positions and office, Defendants Gerardi and Karen Ballard, J. Howard Doughty, Eileen Dunn, Mary Finnin, Mimi Gonzalez, Winifred Kennedy, Elizabeth Mahoney, and José Planillo are fiduciaries of NYSNA under Section 722 of New York Labor Law.  In taking steps to approve NYSNA to proceed to acquire property at 40 Rector Street, without appropriate budgeting and at a time when NYSNA's resources should be directed to the expired collective bargaining agreements expired collective bargaining agreements covering over 20,000 nurses and to the health benefit cuts that have just been implemented, and before the newly-elected officers are seated, Defendants Gerardi and Ballard, Doughty, Dunn, Finnin, Gonzalez, Kennedy, Mahoney, and Planillo have breached their fiduciary duties owed to

NYSNA under Section 722(2) of New York Labor Law, causing damage to NYSNA.  The

prerequisites for filing suit under Section 725(1) of New York Labor Law have been met.

**SEVENTH CAUSE OF ACTION:**
**AGAINST DEFENDANTS GERARDI AND KAREN BALLARD,**
**J. HOWARD DOUGHTY, EILEEN DUNN, MARY FINNIN,**
**MIMI GONZALEZ, WINIFRED KENNEDY,**
**ELIZABETH MAHONEY, AND JOSÉ PLANILLO**
**<u>BREACH OF CONTRACT UNDER NEW YORK LAW</u>**

101.    Plaintiffs repeat and reallege paragraphs 1-100 as if they are fully set forth

herein.

102.    The NYSNA By-Laws are a contract between NYSNA and its members

that is enforceable as such under the laws of the state of New York.  The defendants have

breached the NYSNA By-Laws by ignoring the By-Laws' requirement that the winning

candidates be seated at the annual membership meeting following the election and by vesting the

Election Committee with the authority to decline to seat the winning candidates.

**EIGHTH CAUSE OF ACTION:**
**AGAINST DEFENDANTS GERARDI AND KAREN BALLARD,**
**J. HOWARD DOUGHTY, EILEEN DUNN, MARY FINNIN,**
**MIMI GONZALEZ, WINIFRED KENNEDY,**
**ELIZABETH MAHONEY, AND JOSÉ PLANILLO**
**<u>VIOLATION OF 29 U.S.C. § 481(c)</u>**

103.    Plaintiffs repeat and reallege paragraphs 1-102 as if they are fully set forth

herein.

104.    Section 401(c) of the LMRDA, 29 U.S.C. § 481(c), requires the

defendants "to comply with all reasonable requests of any candidate to distribute by mail or

otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all

members in good standing of such labor organization."

105.    Defendants failed and refused to comply with the reasonable requests of Kane and the members of her slate to email her campaign literature in violation of 29 U.S.C. § 481(c).

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court enter the following necessary relief:

A.    An order enjoining defendants from pursuing the unlawful disciplinary charges and election protests against Plaintiff Kane and/or other NYSNA members;

B.    An order requiring NYSNA to allow Plaintiff Kane and Anthony Ciampa, Veronica Richardson, Verginia Stewart, Grace Otto, Jacqueline Gilbert, and Patricia DiLillo to assume their elected positions at the conclusion of the September 22 membership meeting, as required under Article XIV, Section 7 of NYSNA's Bylaws;

C.    An order enjoining defendants from interfering with the free speech rights of plaintiffs;

D.    An order enjoining defendants from retaliating against plaintiffs and other NYSNA members for the exercise of their free speech rights;

E.    A declaration that defendants violated 29 U.S.C. § 481(c) by failing to reasonably comply with reasonable mailing requests by candidates, including Kane;

F.    An order preliminarily and permanently enjoining NYSNA from amending its By-Laws to render members of NYSNA's Delegate Assembly ineligible to serve on its governing Board of Directors or, alternatively, requiring that any such amendment be approved by a majority vote of the NYSNA collective bargaining members voting in a mail ballot referendum;

G.      An order enjoining further consideration of Gerardi's employment contract and the purchase of any real estate until the elected officers are seated on the Board, and requiring Defendants Gerardi, Ballard, Doughty, Dunn, Finnin, Gonzalez, Kennedy, Mahoney, and Planillo to pay compensatory damages to NYSNA on account of their breach of fiduciary duties owed NYSNA under Counts Three through Six of the Complaint;

H.      An order requiring defendant to pay plaintiffs' reasonable attorneys' fees and costs incurred in bringing this action; and

I.      Such other and future relief as this Court deems just and proper.

Dated: September 19, 2011
       New York, New York

Susan Davis
Bruce Levine
COHEN, WEISS AND SIMON LLP
330 West 42nd Street
New York, NY 10036
(212) 563-4100
sdavis@cwsny.com
blevine@cwsny.com

Attorneys for Plaintiffs

# Exhibit A

NEW YORK NURSE: July/August 2011

# Proposed 2011 amendments to NYSNA bylaws

The NYSNA Board of Directors has approved the following proposed bylaw amendments for presentation to the 2011 Voting Body.

New language is underscored.

## ARTICLE II – MEMBERS, DUES, AND AFFILIATES, SECTION 1. MEMBERS AND DUES, A. MEMBERS, 1) A)

Insert the following language at the end of current paragraph (a) so that the paragraph reads as follows:

1) A member is one:

    a) who:

        1) has been granted a license to practice as a registered nurse in at least one state, territory, possession or District of Columbia of the United States or is otherwise lawfully so entitled to practice and who does not have a license under suspension or revocation, or

        2) is represented by NYSNA in the following all-professional collective bargaining units: Brooks Memorial Hospital, Peconic Bay Medical Center, and Champlain Valley Physicians Hospital, and

    b) whose application for membership has been accepted in accordance with association policy, and

    c) who has paid the current dues and any other dues, fees, and financial obligations as required by current policy, and

    d) who has not been suspended or expelled by this association.

    [There are no changes to b), c) and d).]

**Rationale:** This amendment would give the 350 non-RN members of NYSNA's all-professional collective bargaining units full membership rights. Many of these LBU members occupy elected unit leadership positions and actively support the work and advancement of the E&GW program and the association. The non-RN members of these units assisted in the advancement of the nursing profession when they agreed to be represented by NYSNA. Management in the facilities would not allow the RNs to be organized by NYSNA unless all of the professional staff were organized. Managements' position was that the other professionals would not be willing to join a nurses' union. NYSNA prevailed in three facilities. Those non-RNs are now requesting full membership rights.

## ARTICLE VI – STANDING COMMITTEES

    Proposed New Section 3. A member shall not hold more than one appointed position simultaneously unless the member's particular expertise is essential to more than one committee or council.

    Renumber Current Section 4.

## ARTICLE VII – COUNCILS

    Proposed New Section 5. Simultaneous Service

    A member shall not hold more than one appointed position simultaneously unless the member's particular expertise is essential to more than one committee or council.

    Renumber Current Section 6.

**Rationale (for proposed amendments to Articles VI and VII):** The proposed language is taken from current board of directors policy on appointments. It is based on the belief that the interests of the association are best served if the maximum possible number of individuals participate in the affairs and activities of the association.

## ARTICLE XIII – NOMINATIONS

Proposed New Section 5.

Members shall be eligible to serve in only one elective position in NYSNA at any one time. Elective positions of NYSNA are: board of directors (officers and directors at large); nominating committee; election committee; executive committees of practice focus groups; Delegate Assembly; executive committee of the Congress of Local Bargaining Unit Leaders.

**Rationale:** To avoid inherent conflicts of interest, members should be limited to serving on only one of the stated elected bodies at a time.

:: Publications | :: About NYSNA | :: NYSNA Home