UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

PATRICIA KANE, WENDY BRAITHWAITE,
and MAUREEN EISELE,

                       Plaintiffs,

    - against -

NEW YORK STATE NURSES ASSOCIATION,
TINA GERARDI, KAREN BALLARD, J.
HOWARD DOUGHTY, EILEEN DUNN, MARY
FINNIN, MIMI GONZALEZ, WINIFRED
KENNEDY, ELIZABETH MAHONEY, and JOSÉ
PLANILLO,

                     Defendants.

Case No.: 11-cv-6505 (RJS)

------------------------------------------------------------ X

## SECOND DECLARATION OF PATRICIA KANE

I, Patricia Kane, under penalty of perjury and in lieu of an affidavit as permitted by 28 U.S.C. §1743, hereby declare as follows:

1.    I am a plaintiff in this action and make this declaration in support of the application by all plaintiffs for immediate injunctive relief. I am familiar with the facts and circumstances of this case.

2.    We are requesting that this Court enjoin and direct the New York State Nurses Association ("NYSNA" or "Union") to immediately seat the winning union candidates in an election certified by the independent balloting company retained by NYSNA, Survey and Ballot Systems ("SBS"), on August 24, 2011.

3.    NYSNA's Bylaws require that NYSNA seat the winning candidates in its annual election at the close of its annual meeting following the election. (Article XIV, Section 7). A copy of the By-Laws is attached hereto as Exhibit A. On September 25, 2011, after the conclusion of the annual meeting, I and my slate of winning candidates appeared at the first

meeting of the new Board of Directors that occurs after every annual meeting. We presented ourselves to be seated, but NYSNA refused to seat us, in blatant violation of its controlling By-Laws. When I asked the incoming President of NYSNA, Winifred Kennedy, to read the attendance at the meeting she read the names of old Board of Directors, with the exception of the outgoing President Ballard. She did not identify me and my slate as incoming Board Members, or in any other way. Because we insisted on being present at the Board meeting, the Board would not conduct any business and indicated that it would not meet again until mid-November. At a time when NYSNA is in crisis, this abdication of responsibility, solely to avoid seating the candidates associated with my slate, cannot be allowed to stand.

4.     Article V, Section 10 of NYSNA's Bylaws provides that "[i]n the event of a vacancy occurring in the office of president-elect, the vice president shall serve as president-elect for the remainder of the president-elect's term." At the September 25 Board meeting, Judy Sheridan-Gonzalez, Vice-President of NYSNA and an outspoken supporter of my slate, pointed out that because NYSNA was refusing to seat Pat DiLillo, who was elected to the position of President-Elect, there was a "vacancy" in that position that she, the Vice-President, must fill. Not surprisingly, and again in violation of NYSNA's Bylaws, Kennedy refused to allow Sheridan-Gonzalez to fill the vacancy.

5.     The annual meeting, which was held on September 23-25, 2011, occurred more than 350 miles from where more than 95% of the collective bargaining union members live and work, and was packed with supporters of the entrenched Executive staff and anti-reform leadership. Most of the nurses who supported our slate were unable to afford to take off work and travel to Niagara Falls for the meeting. Throughout the meeting, we were taunted, followed

and discriminated against for what the NYSNA staff and leaders repeatedly told the nurses was a "baseless" lawsuit we filed in this Court last Monday.

6.      On September 24, a vote was held on the By-Law amendment that would strip collective bargaining leaders of their right to hold office on NYSNA's Board. Only 300 members were present in the voting body, out of NYSNA's total membership of 37,000. The vote results were announced on September 25. The amendment passed by a vote of 183 to 81, with a proviso that the amendment would not apply to anyone currently seated.

7.      Prior to the vote on the amendment, NYSNA invited Karen Daley, President of the American Nurses Association ("ANA"), to the podium to address the voting body. Daley discussed the contested election which had taken place, which was entirely inappropriate, and told the members that my slate, if elected, would disaffiliate from the ANA. In a subsequent conversation I had with Daley, she confirmed that she had advised NYSNA of what she was going to say before taking the podium.

8.      After the announcement of the Election Committee's report, and immediately following Daley's disparaging statement that was designed to create a climate of fear about what would occur if my slate were seated, one of my slate's supporters made a motion to require NYSNA to adhere to its By-Laws and seat the winning candidates. A debate ensued during which NYSNA leaders and general counsel, from the dais, spoke against the motion. My slate and its supporters asked a number of questions, including why the election committee didn't interview anyone from our slate, and why it converted pre-election protests to post-election protests (which caused a major delay in the process), without notifying us of this fact. NYSNA leadership, staff and counsel refused to provide us with any information in response to our questions. In contrast, when supporters of the entrenched incumbents asked questions

3

designed to lead to a "no" vote on our motion, NYSNA's counsel provided all the information requested. Not surprisingly, particularly because the meeting was packed with supporters of the CEO and entrenched leadership who had the resources to travel to Niagara Falls, our motion to require NYSNA to follow its Bylaws was voted down.

9.     I do not understand how an organization can be permitted to vote to disregard its own bylaws.

10.     As the members left the room, NYSNA staff handed out copies of Defendant's September 21 brief in this case to members so that they would have time to read and digest it prior to the vote.  The brief alleged the I and the other plaintiffs in the case, rank-and-file nurses who support our slate,  "misled the Court," used "false pretenses" to "draw this court…into…internecine political theatrics," used "deceptive omissions" in the papers we filed and had a "deceptive intention."  Needless to say,  NYSNA staff did not distribute the papers we submitted in this case, nor did it advise the members of this Court's comments concerning NYSNA's behavior in this case.  NYSNA also distributed copies of two NYSNA press releases, Exhibits B and C attached hereto, one of which derides the "baseless" lawsuit that I filed to protect my rights under federal and state law.  NYSNA also encouraged comments from the floor from my slate's opponents concerning my so-called "frivolous" lawsuit.  NYSNA staff and entrenched leadership effectively scorned, ridiculed and tried to humiliate me in front of the members of the voting body because I filed this lawsuit.

11.     Under federal law, 29 U.S.C. § 411(a)(4), I have an absolute right to file a lawsuit to protect my rights under the LMRDA, free from retaliation and discrimination by my union and its elected and staff leaders.

12.     Both during the voting body meeting sessions, and throughout the weekend, NYSNA staff and leadership engaged in retaliatory actions against me, my slate and our supporters.  During one of the voting body sessions, outgoing NYSNA President Karen Ballard ("Ballard"), who was chairing the meeting, allowed a supporter of the entrenched leadership to interrogate one of my supporters, who was speaking at the microphone, about who wrote the notes he was reading. During the meeting, a NYSNA staff member intentionally and hostilely glared at me for long periods of time. It was so disquieting that I had to bring this problem to the attention of NYSNA staff on the dais.  Additionally, during the convention, NYSNA had the entrenched leadership's supporters follow and attempt to intimidate me and my supporters.

13.     In August, 2011, NYSNA members elected the President-Elect (whose term of office as President commences in 2013), Treasurer and four directors-at-large.  I ran for Treasurer as part of a reform slate of candidates known as "New York Nurses for Staffing, Security and Strength."  During the election, I publicly challenged NYSNA's failure to adequately represent the membership.  I and my fellow slate members spoke to thousands of members, disseminated literature and conducted a vigorous campaign against NYSNA's incumbent regime.

14.     I and my entire slate won the election by a substantial margin.  In particular, I was elected by 50.9% of the vote in a three-way field, Pat DiLillo was elected President-elect by 49.5% in a three-way field and slate members Anthony Ciampa, Veronica Richardson, Grace Otto and Virginia Stewart were elected as directors-at-large, earning 51% of the vote in a twelve-way field.  Slate member Jacqueline Gilbert was elected to the Nominating

Committee's Southeastern Region as well.  A copy of the SBS election tally results is attached as Exhibit D.

15.     Under Article XIV Section 4 of NYSNA's By-Laws, Exhibit A attached hereto, election results "shall be announced at the annual meeting."

16.     In the posting of the election results on its website, for the first time ever, and solely because a reform slate had won the election, NYSNA solicited members to file election protests. Although NYSNA informed me and my slate by letter dated July 29 that election protests had been filed against us, it refused our requests to see copies of the protests filed. To date, we have never seen any of these protests.  Nonetheless, because NYSNA refused our requests for an extension of time to respond to the protests, we submitted comprehensive responses to the baseless allegations NYSNA raised.

17.     The NYSNA Board of Directors promulgated a policy, Exhibit E attached hereto, which does not appear anywhere in NYSNA's Bylaws, that outlines the procedures for handling pre and post-election protests.  In accordance with these procedures, all pending protests, with the exception of a protest concerning the election of Pat DiLillo, which I discuss further below, are supposedly being investigated by NYSNA's Election Committee. During its "investigation," the so-called impartial Election Committee never interviewed me or any of my slate members.  Nor did it ask us to submit *any* evidence in support of our position that there was no basis for refusing to seat us at the annual meeting.

18.     The NYSNA Election Committee issued an interim report, Exhibit F attached hereto, on September 16 declaring that it was "unable to certify" any election results, with the exception of the office of president-elect, which the Election Committee refused to

certify. The report also indicated that the Election Committee would not convene again until the middle of October.

19.     NYSNA's Bylaws do not give the Election Committee the authority to "certify" or refuse to certify the election. In fact the results of the election were certified by SBS, the independent balloting company retained by NYSNA, and every member of our slate was declared a winning candidate. See Exhibit D, attached hereto. Nor do the Bylaws give the Election Committee any authority to defer the seating of the elected officers. Rather the Bylaws command that the winning candidates be seated immediately at the conclusion of the annual meeting.

20.     Under Article XIV Section 7 of NYSNA's By-Laws, the term of office of officers or directors "shall commence at the adjournment of the annual membership meeting…and shall continue for the term specified or until their successors are elected." Thus, under NYSNA's Bylaws, NYSNA is required to seat my slate at the adjournment of the meeting, and the incumbent officers, who lost the election (whose terms ended because "their successors [were] elected"), are required to vacate their posts.

21.     Despite the unequivocal language of NYSNA's governing By-Laws that officers' terms shall commence at the adjournment of the membership meeting, on September 23, NYSNA issued a press release stating that because, the Election Committee had not completed its work regarding the 2011 election protests, NYSNA would refuse to seat any new Board members at the convention. The press release also indicated that the incumbent officers who were defeated in the election, whose terms expired at the conclusion of the annual meeting, would remain in office beyond the expiration of their expired terms. A copy of the September 23 press release is attached hereto as Exhibit C.

22.    As noted above, that same day, NYSNA issued another press release, Exhibit B attached hereto, referring to the "baseless" lawsuit I filed to protect my rights under federal and state law.  Issuing a press release characterizing my lawsuit as baseless, and distributing that to all members at the annual meeting, together with NYSNA's brief accusing me, among other things, of deception, acting on false pretenses and misleading the court, chills my rights under Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), to bring a lawsuit against NYSNA and its officers, for violation of my rights.

23.    NYSNA's refusal to seat the winning candidates due to the pendency of election protests is directly contrary to what occurred in connection with the 2010 NYSNA officer elections, where the entrenched leaders won a majority of seats on the Board. There, I had filed an election protest about a group of candidates opposing me and my reform slate of candidates. My protest was still pending before the Election Committee at the time of the 2010 annual membership meeting.  Still, the election results, also certified by SBS, were announced at the meeting and the elected officers, now incumbents, were permitted to take office.

24.    For many years, NYSNA's By-Laws (Article V, Section 3(a)) has provided that the president-elect shall serve in that office for two years and then become president for a two-year term. This has been the longstanding practice at NYSNA. In the September 23 interim report, the Election Committee refused to certify the election of Patricia DiLillo to the office of President-Elect because it claimed that a letter from the Department of Labor letter had advised NYSNA that it was a local labor organization (whose officers must be elected at least every three years). The Department of Labor letter is attached as Exhibit G. NYSNA's counsel's communication regarding the Department of Labor's letter is attached hereto as Exhibit H.

25. Although NYSNA knew of the Department of Labor's position *before* the election tally, it was not until *after* a candidate on my slate won the election that it decided to eliminate the position of President-Elect. Notably, at the same time that the Election Committee determined that it could not seat DiLillo because in her second year as president it will be more than three years since she was elected, Winifred Kennedy, part of the entrenched leadership who has served as President-Elect for two years, is being permitted to remain on the Board of Directors and serve as president for an additional two years. While the advice of the Department of Labor will need to be appropriately considered, NYSNA must not be permitted to eliminate an elected office under its Bylaws *after* a candidate opposed to the entrenched NYSNA leadership won the election and use the Department of Labor's letter as a pretext to bar the democratically elected President-Elect entirely from her position. When asked to read the attendance at the September 25 Board of Directors meeting, incoming President Kennedy identified no one as President-Elect. On September 25 NYSNA issued another press release, attached hereto as Exhibit I, indicating that the entrenched leadership would remain in place.

26. Now, contrary to what occurred in 2010, and in brazen disregard of its own By-Laws, NYSNA has refused to seat me and the other winning candidates at the annual membership meeting on September 25.

27. NYSNA's conduct flouts the clear requirement of its own Bylaws and violates the democratic mandate of the voters in the secret ballot election.

28. NYSNA's actions will grievously harm the union membership unless enjoined by this Court. I and my slate will make up a majority of the Board when we are seated, as we are lawfully required to be. NYSNA is in a crisis, with more than 22,000 members

working without the protection of collective bargaining agreements because NYSNA has failed to renegotiate them. The current NYSNA Board is also approving lavish retiree and other benefits for the CEO, which is not in the interests of NYSNA's members. My slate has pledged to reform this union and the present leadership is dead set against our taking office. The membership has spoken and we have been properly elected. The mandate of NYSNA's By-Laws that we be seated should be ordered by this Court.


Dated: September 25, 2011
      Staten Island, New York


Patricia Kane

# EXHIBIT A

# BYLAWS

### and
### Extracts From
### Articles of Incorporation



Bylaws as amended October 22, 2010
Articles as amended November 30, 1995

# Extracts From Articles of Incorporation
### (as amended November 30, 1995)

1st.    The purposes...for which...the corporation shall now exist:

To further the efficient care of the sick and disabled and others requiring nursing service; to advance the educational and professional standards of nursing; to maintain the honor, character and dignity of the nursing profession; to promote the educational and professional advancement of nurses; to promote and protect the health and welfare of nurses; to promote cordial relations and cooperation among New York state nurses and between such nurses and nurses (individually or in association with one another) throughout the world; to publish and otherwise disseminate information concerning nursing and nurses; and to do all things necessary, proper, incidental, suitable, useful and conducive to the complete accomplishment of the foregoing purposes in their broadest sense.

2nd.    That the corporate name by which said Corporation hereby to be formed shall be known and distinguished is and shall be THE NEW YORK STATE NURSES ASSOCIATION.

3rd.    That the territory in which the operations of said Corporation are to be principally conducted in the State of New York.

4th.    That the principal office of said Corporation shall be located in the County of Albany and State of New York.

# TABLE OF CONTENTS

| | | |
|---|---|---|
| Article I | Name, Object and Functions...................... | 1 |
| Article II | Members, Dues, and Affiliates................... | 1 |
| Article III | Disciplinary Action........................ | 2 |
| Article IV | Board of Directors........................ | 2 |
| Article V | Officers and Directors................... | 4 |
| Article VI | Standing Committees.................... | 5 |
| Article VII | Councils.................................... | 5 |
| Article VIII | Practice Focus Groups............................ | 6 |
| Article IX | Delegate Assembly..................... | 7 |
| Article X | Congress of Bargaining Unit Leaders | 7 |
| Article XI | Constituent District Nurses Association Assembly............................. | 8 |
| Article XII | New York State Nurses Association Political Action Committee...................... | 9 |
| Article XIII | Nominations........................ | 9 |
| Article XIV | Elections............................ | 9 |
| Article XV | Voting Body............................ | 10 |
| Article XVI | Membership Meetings................... | 10 |
| Article XVII | Quorum........................ | 11 |
| Article XVIII | Constituent District Nurses Associations... | 11 |
| Article XIX | Organizational Membership in American Nurses Association................. | 12 |
| Article XX | Parliamentary Authority................... | 12 |
| Article XXI | Association Communication...................... | 13 |
| Article XXII | Amendments............................. | 13 |

# BYLAWS

## ARTICLE I - NAME, OBJECT AND FUNCTIONS

### Section 1.
The name of this association shall be The New York State Nurses Association, hereinafter referred to as this association.

### Section 2.
The object of this association is to accomplish the purposes as stated in the Articles of Incorporation.

### Section 3.
Functions:
a) Promote nursing and health services of a nature commensurate with human needs;
b) Advocate for effective systems of nursing care delivery;
c) Identify and promote standards of nursing education, practice and services, and research;
d) Promote ethical standards in keeping with the American Nurses Association *Code for Nurses*;
e) Initiate and conduct legislative activities and provide for political action that will insure and protect the public's health;
f) Promote and protect the economic and general welfare of nurses;
g) Approve, conduct and promote continuing education in nursing;
h) Act and speak for nurses and nursing;
i) Represent nurses and nursing to the public, governmental and non-governmental groups;
j) Provide for communication with consumers concerning nursing and health care;
k) Promote recruitment for nursing careers.

## ARTICLE II - MEMBERS, DUES, AND AFFILIATES

### Section 1. Members and Dues
A. Members
   1) A member is one:
      a) who has been granted a license to practice as a registered nurse in at least one state, territory, possession or District of Columbia of the United States or is otherwise lawfully so entitled to practice and who does not have a license under suspension or revocation, and
      b) whose application for membership has been accepted in accordance with association policy, and
      c) who has paid the current dues and any other dues, fees, and financial obligations as required by current policy, and
      d) who has not been suspended or expelled by this association.
   2) A Direct Member is one:
      a) who meets the above requirements of a Member, and
      b) whose membership status is further defined in ANA bylaws and agreement between NYSNA and ANA.
B. Dues
   1) Annual dues for this association are established by the membership voting by secret ballot.
   2) The annual dues provide membership for twelve consecutive months.

1

3)      Members who qualify for the following categories may pay reduced dues as established by the voting body:
  a)  Nurses not represented for collective bargaining by this association;
  b)  Nurses age 62 and older who are retired and earning not more than what social security allows;
  c)  Unemployed nurses;
  d)  Nurses who are totally and permanently disabled;
  e)  Lifetime members.
4)  Upon failure to pay current dues and any other dues, fees, and financial obligations as required by current policy, membership rights and privileges are forfeited.

## Section 2. Organizational Affiliates

a)  Definition
An organizational affiliate of NYSNA is an organization that:
  1)  meets criteria established by the NYSNA board of directors;
  2)  has been granted organizational affiliate status by the board of directors.
b)  Qualifications
Each organizational affiliate shall meet the criteria established by the NYSNA board of directors.
c)  Responsibilities
Each organizational affiliate shall:
  1)  maintain a mission and purpose harmonious with the purposes and functions of NYSNA;
  2)  pay an affiliation fee to NYSNA.
d)  Rights
Each organizational affiliate shall be entitled to:
  1)  one representative in the NYSNA Voting Body who must be a registered nurse who shall be eligible to vote on all matters coming before the Voting Body except issues related to establishing dues and amendment of bylaws;
  2)  make reports or presentations to the Voting Body within its area of expertise, including presentation of proposed actions;
  3)  submit the names of qualified registered nurse members as nominees for appointment to serve in NYSNA appointed structural units.

## ARTICLE III - DISCIPLINARY ACTION

### Section 1.

Members shall be subject to reprimand, censure, fine, suspension or expulsion for violation of the American Nurses Association *Code for Nurses*, or for violation of these bylaws or for conduct detrimental or injurious to the association or its purposes, in accordance with established policy.  Conduct considered detrimental or injurious to the association or its purposes shall include working behind a duly authorized picket line established by NYSNA in a primary dispute with an employer, provided the member is a member of a bargaining unit represented by the association.

### Section 2.

A member may apply for reinstatement in accordance with established policy.

### Section 3.

Disciplinary action taken by any state nurses association against its members shall be recognized by this association.

## ARTICLE IV - BOARD OF DIRECTORS

### Section 1.

The Board of Directors is the elected body responsible for the corporate management and fiduciary affairs of this association. It is authorized, by provisions of applicable law, to do all things

2

appropriate and necessary for the development and perpetuation of this association.

## Section 2.
The Board of Directors shall consist of the five officers and eight directors at large.

## Section 3. Functions
a)  Transact the business of this association;
b)  Establish major corporate policies;
c)  Establish the association's fiscal year;
d)  Adopt an annual budget;
e)  Provide for an annual audit of all financial books by an independent CPA;
f)  Provide for maintenance of association headquarters;
g)  Appoint a chief executive officer and define the responsibilities;
h)  Establish special committees as needed;
i)  Appoint members of all committees and councils with the exception of the Nominating Committee;
j)  Fill any vacancy on the Board of Directors except a vacancy occurring in the office of the president or president-elect;
k)  Fill any vacancy on the Nominating Committee;
l)  Determine the date, place and registration fee for the annual membership meeting;
m)  Ratify action authorized by vote of the Board of Directors between meetings of the Board of Directors;
n)  Provide for the establishment and dissolution of practice focus groups;
o)  Assume responsibility with regard to constituent district nurses associations as specified in these bylaws;
p)  Submit to the New York State Education Department a list of qualified nominees for suggested appointment to the State Board for Nursing;
q)  Grant exception to the provisions of these bylaws for projects relating to the membership year or the collection and payment of dues;
r)  Recommend to the voting body persons to receive honorary recognition in accordance with established policy;
s)  Provide for implementation of association policies and positions approved by the Voting Body
t)  Report to the voting body at the annual meeting the current status of all resolutions passed by the voting body at the prior annual meeting.
u)  Appoint trustees of the NYSNA-PAC, in accordance with the bylaws of the NYSNA-PAC.

## Section 4. Meetings
a)  Regular meetings shall be held immediately preceding and immediately following each annual membership meeting and at such other times as shall be determined by the Board of Directors.
b)  Special meetings may be called by the president on ten calendar days notice to each member of the Board of Directors either by written or verbal communications, and shall be called by the president in like manner and on like notice upon the written request of six or more members of the Board of Directors. Special meetings shall be held at such time and place as may be specified in the notice thereof.
c)  In intervals between regular meetings, the president may refer and submit to the members of the Board of Directors definite questions relating to the affairs of the association which in the opinion of the president, require immediate action on the part of the Board of Directors. The result of such a referendum, which shall require a majority vote of the entire Board of Directors, shall control the action of this association and its Board of

Directors, officers, organizational units, committees, councils, agents and employees.

## Section 5. Executive Committee

There shall be an Executive Committee of the Board of Directors composed of the five officers of this association which shall have all the powers of the Board of Directors to transact business of an emergency nature between regular meetings.

# ARTICLE V - OFFICERS AND DIRECTORS

## Section 1.

a)   The five officers of this association shall be a president, president-elect, vice president, secretary and treasurer.
b)   There shall be eight directors at large.

## Section 2. Election

a)   The president-elect, treasurer and four directors at large shall be elected in the odd year.
b)   The vice president, secretary and four directors at large shall be elected in the even year.

## Section 3. Terms

a)   The president-elect shall serve in that office for a two year term and then shall become president for a two year term.
b)   The other officers and directors at large shall serve two year terms.
c)   No officer or director at large shall serve more than two consecutive terms in the same office nor a total of more than eight consecutive years.

## Section 4.

a)   Officers shall perform the duties usually performed by such officers, duties specified in these bylaws, and duties designated by the Board of Directors.
b)   Directors at large shall perform the duties specified in these bylaws and the duties designated by the Board of Directors.

## Section 5. Duties of the President

a)   Chair the Board of Directors, the Executive Committee and the Constituent District Nurses Association Assembly.
b)   Preside at all meetings of this association;
c)   Serve as an ex officio member of all committees except the Nominating Committee;
d)   Serve as the official representative of this association.

## Section 6. Duties of the President-elect

In the absence of the president, the president-elect shall assume the duties of the president as specified in Article V, Section 10(a).

## Section 7. Duties of the Vice President

In the absence of the president-elect, the vice president shall assume the duties as specified in Article V, Section 10(b).

## Section 8. Duties of the Secretary

a)   The secretary shall be responsible for all minutes, records and notifications.
b)   The chief executive officer shall assume such duties in connection with the work of the secretary as shall be designated by the Board of Directors.

## Section 9. Duties of the Treasurer

a)   The treasurer shall be responsible for the fiscal affairs of this association.

4

b)   The chief executive officer shall assume such duties in connection with the work of the treasurer as shall be designated by the Board of Directors.

## Section 10. Vacancies

a)   In the event of a vacancy occurring in the office of president, the president-elect shall serve as president for the remainder of the president's term and then shall become the president.

b)   In the event of a vacancy occurring in the office of president-elect, the vice president shall serve as president-elect for the remainder of the president-elect's term. This shall not be construed to mean that the vice president shall become president-elect when this term of office is completed.

c)   Absence from two consecutive regular meetings of the Board of Directors shall be cause for declaring a vacancy in the Board position.  Such vacancy shall be declared by majority vote of the Board of Directors.

# ARTICLE VI - STANDING COMMITTEES

## Section 1.

There shall be standing committees on finance and bylaws composed of members who shall assume such duties as specified in these bylaws and assigned by the Board of Directors.

## Section 2.

Standing committees shall be appointed by the Board of Directors, and shall serve for a two-year term or until their successors are appointed.

## Section 3. Committee on Bylaws

a)   The committee shall be composed of five members.

b)   The committee shall:

1)   review and evaluate existing bylaws and consider proposals for change submitted by members, prepare in appropriate language proposed amendments for review and approval by the Board of Directors;

2)   advise constituent district nurses associations concerning bylaws and proposed amendments related to constituent requirements;

3)   review the bylaws of a nurses association wishing to become a constituent association of this association and report its findings to the Board of Directors.

## Section 4. Committee on Finance

a)   The committee shall be composed of five members including the treasurer and two other members of the Board of Directors. The treasurer shall serve as chairperson.

b)   The committee shall:

1)   review the financial status of this association;

2)   advise regarding financial policies;

3)   prepare an annual budget for approval by the Board of Directors.

# ARTICLE VII - COUNCILS

## Section 1. Names

There shall be the following councils:

a)   Council on Continuing Education

b)   Council on Ethics and Human Rights

c)   Council on Legislation

d)   Council on Nursing Education

e)   Council on Nursing Practice

f)   Council on Nursing Research

g)   Council of Retired Nurses

### Section 2. Purpose
Councils are responsible for advancing the programs and purposes for which this association exists.

### Section 3. Composition
Councils are established by the voting body. The Board of Directors shall appoint at least five members to each council and shall designate the chairperson.

### Section 4. Terms of Appointment
Members of councils shall serve for two years or until their successors are appointed.

### Section 5. Accountability
Councils serve in an advisory and consultative capacity to the Board of Directors and report to the Board of Directors.

### Section 6. Functions
Each council shall:
a) analyze trends and developments within its area of responsibility;
b) establish a plan of operation for carrying out its responsibilities;
c) recommend standards, policies, and positions to the Board of Directors and the voting body;
d) provide for dissemination of information to members and others;
e) assume other functions as assigned by the Board of Directors.

## ARTICLE VIII – PRACTICE FOCUS GROUPS

### Section 1.
a) Practice focus groups are established by the Board of Directors to assist individual members to improve professional practice and development within a specific clinical or functional area.
b) Practice focus groups may be established by the Board of Directors in any area of specialty nursing practice for which the Board determines that there is need and sufficient interest of members.

### Section 2.
Each group shall:
a) provide a forum for members for discussion of relevant issues and concern;
b) serve as a source for consultation and expertise;
c) develop positions and policies for recommendation to the Board of Directors;
d) promote adherence to approved standards of nursing practice;
e) maintain communications with other units and councils.

### Section 3.
The composition of practice focus groups shall be limited to members employed in or, in accordance with established group policy, directly concerned with the respective groups.

### Section 4.
The activities, policies and pronouncements of each practice focus group shall be in accord with those of this association.

### Section 5.
a) Each practice focus group shall have an executive committee composed of a chairperson, vice chairperson, and three members at large. The chairperson and two members at large shall be elected at the annual meeting in the even year to serve for a term of two years; the vice chairperson and one member

at large shall be elected at the annual meeting in the odd year to serve for a term of two years.

b) Each executive committee shall be responsible for the business of the group.

c) Executive committee members will serve as the group's representatives on the NYSNA Council on Nursing Practice.

## Section 6. Terms

No member of the executive committee of a practice focus group shall serve more than two consecutive terms in the same office nor a total of more than eight consecutive years.

## Section 7. Vacancies

a) In the event of a vacancy occurring in the office of chairperson of a practice focus group, the vice chairperson shall serve as chairperson for the remainder of the chairperson's term.

b) In the event of a vacancy occurring in the office of vice chairperson or members at large, the vacancy will be filled by appointment of the Board of Directors.

c) Absence from two consecutive regular meetings of an executive committee or the Council on Nursing Practice shall be cause for declaring a vacancy in the position. Such vacancy shall be declared by majority vote of the Board of Directors.

## Section 8.

Practice focus groups may be dissolved by a two-thirds vote of the Board of Directors;

a) upon agreement by the Board of Directors and the respective group that there is no reason for its continuance; or

b) upon determination by the Board of Directors of failure of the group to carry out its objective or to conform to the principles and requirements of this association.

**Proviso:  Amendments to Article VIII shall be effective at the 2008 NYSNA Annual Meeting.**

# ARTICLE IX - DELEGATE ASSEMBLY

## Section 1. Definition

The Delegate Assembly is an organizational unit of members represented by the association for purposes of collective bargaining.

## Section 2. Purposes

The purposes of the Delegate Assembly are to:

a) Advance the mission of the association as it relates to the Economic and General Welfare Program.

b) Provide an opportunity for mutual assistance to local bargaining units.

c) Assist local bargaining unit members and staff of the association to strengthen the collective bargaining program.

## Section 3. Accountability

The Delegate Assembly shall operate under its own rules which shall be in conformity and compliance with the bylaws and policies of the association.

# ARTICLE X – CONGRESS OF BARGAINING UNIT LEADERS

## Section 1. Definition

The Congress of Bargaining Unit Leaders (The Congress) is an organizational unit comprised of at least one representative and not more than two representatives from each of the association's local bargaining units. Each local bargaining unit has one vote in the Congress.  The Congress is the broadest democratic unit

representing the collective bargaining interests of the association members within the Economic and General Welfare Program.

## Section 2. Purposes

The purposes of the Congress of Bargaining Unit Leaders are to:

a) Advance the mission of the association as it relates to the Economic and General Welfare Program through the focused work of its local bargaining units.

b) Identify and discuss the concerns of the local bargaining units and make recommendations to the chief executive officer and E&GW program director on how to address these concerns.

c) Identify opportunities for providing mutual assistance to the local bargaining units to the CEO and program director.

d) Participate in providing mutual assistance to the local bargaining units.

e) Collaborate with the members of the local bargaining units, members of the Delegate Assembly, the CEO, and the program director in strengthening the association's collective bargaining program.

## Section 3. Accountability

The Congress of Bargaining Unit Leaders shall operate under its own rules which shall be in conformity with the bylaws and policies of the association.

# ARTICLE XI - CONSTITUENT DISTRICT NURSES ASSOCIATION ASSEMBLY

## Section 1. Purpose

The Constituent District Nurses Association Assembly consults with and advises the Board of Directors on professional and organizational issues of interest to this association.

## Section 2. Composition

Members of the Constituent District Nurses Association Assembly shall be:

a) the president or an alternate and the executive director of this association;

b) the president or an alternate of each constituent district nurses association;

c) the executive director of each constituent district nurses association in which an executive director is appointed.

## Section 3. Meetings

Meetings of the Constituent District Nurses Association Assembly shall be held at such times and places as shall be determined by the Board of Directors.

## Section 4. Functions

The Constituent District Nurses Association Assembly shall:

a) serve as consultant to the Board of Directors in defining and interpreting the district nurses association viewpoint on nursing, health care, and organizational issues;

b) consider issues referred by the Board of Directors or the voting body to district nurses associations and/or to the Constituent District Nurses Association Assembly, and advise the NYSNA president and Board of Directors on those issues;

c) identify issues of concern to district nurses associations;

d) identify mechanisms for strengthening:

1) the relationships between NYSNA and district nurses associations;

2) communications between NYSNA and district nurses associations;

3) collaborative efforts of NYSNA and district nurses associations.

## ARTICLE XII - THE NEW YORK STATE NURSES ASSOCIATION POLITICAL ACTION COMMITTEE

### Section 1. Purpose

The New York State Nurses Association Political Action Committee (NYSNA-PAC) is the nonpartisan political action committee of NYSNA.

### Section 2. Accountability

a)   NYSNA-PAC shall operate under its own bylaws, and shall be in conformity and compliance with the policies and legislative platforms of NYSNA and in compliance with the New York State Election Law.

b)   The board of trustees of NYSNA-PAC shall report to and be accountable to the board of directors of NYSNA.

## ARTICLE XIII - NOMINATIONS

### Section 1.

The Nominating Committee shall be elected annually and shall consist of five members representative of designated geographic areas. All registered professional nurse members of NYSNA shall be assigned to one of these areas.  The chairperson of this committee shall be the member receiving the greatest number of votes.

### Section 2.

Nominating Committee members may not be candidates for any position other than delegate or alternate to the ANA House of Delegates, nor may they serve consecutive terms on the committee. NYSNA staff members may not be candidates for, nor may they service in, any position other than delegate or alternate to the ANA House of Delegates.

### Section 3.

On or before February 1 of each year, the Nominating Committee shall advise the members and the constituent district nurses associations of the offices to be filled and request from them the names of members qualified, eligible and willing to serve if elected. In the odd years, it shall also request the names of members who are qualified and willing to serve if elected as delegates and alternates to the American Nurses Association's House of Delegates and special meetings.  A direct request for qualified nominees shall also be carried in an official NYSNA publication.

### Section 4.

The Nominating Committee shall prepare a ticket of at least two members for each office to be filled. A member who meets the established qualifications for an elective office may submit a self-declaration as a candidate in writing to the executive director of NYSNA provided that the member is not currently:  (a) serving on the Nominating Committee, nor (b) a member of the NYSNA staff.

## ARTICLE XIV - ELECTIONS

### Section 1.

Election of officers, directors at large, Nominating Committee and delegates and alternates to the American Nurses Association House of Delegates by members shall be by secret mail ballot.

### Section 2.

The ballot shall be mailed no later than 60 days before the association's annual meeting.

### Section 3.
The procedure for carrying out voting by secret mail ballot shall be determined by the Board of Directors.

### Section 4.
The results of the secret mail ballot shall be announced at the annual meeting.

### Section 5.
A plurality vote of those entitled to vote and voting shall constitute an election. The nominees who receive the highest number of votes shall be declared elected.

### Section 6.
In case of any tie the choice shall be decided by lot.

### Section 7.
The terms of all officers, directors and the Nominating Committee shall commence at the adjournment of the annual membership meeting at which they were elected and shall continue for the term specified or until their successors are elected.

### Section 8.
All ballots, credentials and other records of the election shall be preserved for one year after the election.

## ARTICLE XV - VOTING BODY

### Section 1: Composition
The voting body at each annual membership meeting and special meeting shall be composed of the members and organizational affiliate representatives present. There shall be no proxy voting.

### Section 2: Qualifications
Current membership in NYSNA or status as an organizational affiliate representative as defined in Article II of these bylaws is required of any individual participant in the voting body and will be verified at the time of registration.

### Section 3: Authority
The Voting Body will: a) establish annual dues to be considered for voting by the entire membership; b) establish association policies and directions; c) approve recipients of Honorary Recognition; d) establish councils; e) adopt and maintain bylaws; f) delegate authority not otherwise delegated in these bylaws.

## ARTICLE XVI - MEMBERSHIP MEETINGS

### Section 1.
This association shall hold an annual membership meeting at such time and place as shall be determined by the Board of Directors.

### Section 2.
Every member is entitled to attend and vote in accordance with established policy.

### Section 3.
The order of business at each annual membership meeting of this association shall be in accordance with an agenda adopted at the beginning of the meeting and shall include:
Address of President
Address of Chief Executive Officer
Reports of Officers
Reports of Standing Committees
Reports of the Councils
Reports of Practice Focus Groups

Miscellaneous Business
Report of Elections

**Section 4.**
Special meetings of this association may be called by the Board of Directors and shall be called by the president upon the written request of a majority of the constituent district nurses associations or not less than 100 members.

**Section 5.**
Notices of all annual and special membership meetings of this association shall be sent to each constituent district nurses association and to all members of this association at least thirty days before the first day of the meeting.

## ARTICLE XVII - QUORUM

**Section 1.**
Five members of the Board of Directors, one of whom shall be the president or president-elect, and not less than 200 members representative of designated geographic areas shall constitute a quorum for the transaction of business at any annual membership meeting of this association.

**Section 2.**
Seven members of the Board of Directors, one of whom shall be the president or president-elect, and not less than 250 members representative of designated geographic areas shall constitute a quorum for the transaction of business at any special meeting of this association.

**Section 3.**
A majority of the Board of Directors, including the president or president-elect, shall constitute a quorum at any meeting of the Board of Directors.

**Section 4.**
A majority of any standing, special committee or council shall constitute a quorum.

## ARTICLE XVIII - CONSTITUENT DISTRICT NURSES ASSOCIATIONS

**Section 1.**
District nurses associations which have been or which hereafter may be organized, whose bylaws are in harmony with the bylaws of this association and have been approved by a majority vote of the Board of Directors of this association, shall be recognized as constituent associations of this association.

**Section 2.**
Boundaries of constituent district nurses associations shall be clearly defined and recorded by the Board of Directors of this association. Boundaries may be changed by a two-thirds vote of the Board of Directors provided either:
a)   such change has been approved by each constituent district nurses association involved; or
b)   a majority of the members of this association residing in the area to be changed have requested such change in writing.

**Section 3.**
It shall be the duty of each constituent district nurses association of this association to:
a)   require that all of its members have the qualifications specified in Article II - Section I of these bylaws;

b) send to the secretary of this association the names and addresses of all officers and members of the Board of Directors of the constituent district nurses associations immediately following their election or appointment;

c) confer with the Committee on Bylaws of this association concerning any proposed amendments related to constituent requirements;

d) adopt and maintain bylaws in harmony with the bylaws of this association and send to this association up-to-date copies;

e) submit an annual report.

## Section 4.

Any constituent district nurses association which fails to comply with the constituent requirements of these bylaws, or for other cause deemed sufficient, may be disqualified as a constituent association of The New York State Nurses Association by a two-thirds vote of the Board of Directors, provided due notice has been given the constituent district nurses association at least three months before the vote is taken.

## Section 5.

A constituent district nurses association which has been disqualified may be reinstated by a two-thirds vote of the Board of Directors.

# ARTICLE XIX - ORGANIZATIONAL MEMBERSHIP IN AMERICAN NURSES ASSOCIATION

## Section 1. Membership

This association is a member state nurses association of the American Nurses Association and maintains an unrestricted membership in accordance with American Nurses Associations bylaws.

## Section 2. Dues

This association shall pay dues to the American Nurses Association in accordance with policies adopted by the American Nurses Association House of Delegates.

## Section 3. Representation in ANA House of Delegates

a) This association is entitled to representation in the House of Delegates of the American Nurses Association in accordance with American Nurses Association bylaws and policy.

b) Delegates and alternates to meetings of the American Nurses Association House of Delegates shall be elected by secret mail ballot for the term specified in the American Nurses Association bylaws.

## Section 4. Representation at ANA Constituent Assembly

This association is entitled to representation at Constituent Assembly meetings of the American Nurses Association in accordance with American Nurses Association bylaws and policy.

# ARTICLE XX – PARLIAMENTARY AUTHORITY

The rules contained in the current edition of *Robert's Rules of Order Newly Revised* shall govern meetings of this association in all cases to which they are applicable and in which they are not inconsistent with these bylaws.

## ARTICLE XXI – ASSOCIATION COMMUNICATION

The board of directors shall establish and maintain vehicle(s) of communication for the association.  Information carried therein shall constitute official notification to the membership at all times.

## ARTICLE XXII - AMENDMENTS

### Section 1.

These bylaws may be amended at any annual membership meeting or special meeting by a two-thirds vote of the voting body present and voting.

All proposed amendments shall be in the possession of the secretary of this association at least seventy-five days before the date of the annual membership meeting or special meeting, as the case may be, and shall be appended to the call for such meeting.

### Section 2.

These bylaws may be amended without previous notice at any meeting by 99% of the voting body present and voting.

**New York State
Nurses Association**
11 Cornell Road
Latham, New York 12110-1499
Phone:  (518) 782-9400
(800) 724-NYRN
website: www.nysna.org
email: info@nysna.org

updated:  11/1/10

# EXHIBIT B

**For Immediate Release**

**Contact: Robin Wood – 518.649.3966**

# NYSNA Fights Baseless Suit to Block Convention Vote

**NIAGARA FALLS, Sept. 23, 2011** – Three NYSNA members have filed a lawsuit to prohibit NYSNA members from voting on an amendment to NYSNA's bylaws during the Convention this Saturday.

The Plaintiffs in the lawsuit are Patricia Kane, Wendy Braithwaite, and Maureen Eisele.

The suit seeks to prevent a democratic vote on a proposed bylaw amendment that would reduce conflicts of interest and encourage broader participation in NYSNA governance.

In the lawsuit, Plaintiffs falsely contend that the amendment would prevent "collective bargaining leaders" from serving on the Board of Directors.  In fact, the amendment would only prevent members from serving in more than one elective position of NYSNA at any one time. "Elective positions" are defined in the proposed amendment as positions on the Board of Directors; Nominating Committee; Election Committee; Executive Committees of Practice Focus Groups; Delegate Assembly; and Executive Committee of the Congress of Local Bargaining Units.

Plaintiffs' thus apparently define "collective bargaining leader" to exclude all LBU officers, Congress members, and active rank-and-file members who are not in the Delegate Assembly or the Executive Committee of the Congress.

Though Plaintiff Kane, as a member of the Board of Directors, has been aware since June that the bylaw vote would occur, Plaintiffs have chosen to wait until the eve of the vote to launch their anti-democratic effort to stop it.

NYSNA has filed papers in response to the Plaintiffs' attempt to get a court order that would prevent members from voting on the proposed bylaw amendment.  The lawsuit also makes a potpourri of baseless claims.  Among those claims are that the NYSNA Election Committee, a majority of whose members are elected, should be prevented from continuing to review members' protests to the NYSNA election, and that the named individual Defendants, NYSNA CEO Tina Gerardi, and a majority of the members of the Board of Directors, have prevented the Plaintiffs from exercising their rights to participate in the affairs of NYSNA and have violated their fiduciary duty to NYSNA.  NYSNA will continue to vigorously defend itself and the rights of its members from scurrilous accusations.

The New York State Nurses Association is the voice for nursing in the Empire State. With more than 37,000 members, it is New York's largest professional association and union for registered nurses. The association represents registered nurses, and some all-professional bargaining units, in New York and New Jersey. It supports nurses and nursing practice through education, research, legislative advocacy, and collective bargaining.

- 30 -

:: <u>Press Releases</u> | :: <u>NYSNA Home</u>

# EXHIBIT C

**For Immediate Release**

**Contact: Robin Wood - 518.649.3966**

# NYSNA Election Committee issues interim election report

## COMMITTEE HAS NOT CONCLUDED WORK REGARDING THE 2011 ELECTION OF OFFICERS

**NIAGARA FALLS, Sept. 23, 2011** – The Election Committee of the New York State Nurses Association Wednesday presented an interim report to the association's board of directors regarding the 2011 association election of officers. The committee, which is made up of five NYSNA members, said that it has not concluded its work and is still considering some of the more than 40 election protests filed by more than 130 members.

With one exception, the committee said, it is not yet able to certify, nor refuse to certify any of the election results and, therefore, no new board members will be seated at NYSNA's convention, which runs through Sunday in Niagara Falls.

The exception is that the election committee has determined it will not certify the election for the office of president-elect in response to election protests received by members objecting to the unlawful length of the president-elect's term of office. Currently, NYSNA's president-elect serves two years as president-elect and two years as president of the association's board of directors, for a four-year term of office. The association has received a letter from the U.S. Department of Labor's Office of Labor Management Standards that states the president-elect's four-year term violates the Labor-Management Reporting and Disclosure Act (LMRDA) requirement that local labor organizations elect officers at least every three years.

The election committee has refused to certify the election for the new president-elect, and has referred the matter to the board of directors for them to initiate the process of amending the association's bylaws to conform to the requirements of the LMRDA. Following action by the board and members in coming into compliance with the LMRDA, the election committee expects to review the matter and order the election re-run.

The election committee is scheduled to meet and continue its work on October 14.

The New York State Nurses Association is the voice for nursing in the Empire State. With more than 37,000 members, it is New York's largest professional association and union for registered nurses. The association represents registered nurses, and some all-professional bargaining units, in New York and New Jersey. It supports nurses and nursing practice through education, research, legislative advocacy, and collective bargaining.

- 30 -

:: Press Releases | :: NYSNA Home

1

# EXHIBIT D

# NEW YORK STATE NURSES ASSOCIATION

## 2011 ASSOCIATION-WIDE ELECTION

## ELECTION SUMMARY

ELIGIBLE VOTERS ————————————————————— 36,852

PAPER BALLOTS ——————————————————————— 2,045

Web Ballots ————————————————————————— 577

Duplicate Web/Paper Ballots ———————————————— 2

FINAL WEB BALLOTS ————————————————————— 575

TOTAL RETURNS ——————————————————————— 2,620

PERCENT RETURNED ————————————————————— 7.1%

08/24/2011

_____     Date

John Mulcahy
Director of Operations

08/24/2011

_____     Date

Notary Public

KIMBERLEE ANN SMITH
NOTARY PUBLIC
MINNESOTA
MY COMM. EXPIRES JAN. 31, 2014

Quality Assured Tabulations by Survey & Ballot Systems

DirectVote

**NEW YORK STATE NURSES ASSOCIATION**

**2011 ASSOCIATION-WIDE ELECTION**

**OFFICIAL RESULTS**

### President-elect (Vote for 1)

|  | Votes | Percent |
|---|---|---|
| Patricia DiLillo | 1,249 | 49.5% |
| Barbara Zittel | 770 | 30.5% |
| J. Howard Doughty | 496 | 19.6% |
| write in only if different from listed candidates | 10 | 0.4% |
| Total Valid Ballots | 2,525 | |
| Unexercised Ballot(s) | 94 | |
| Invalid Ballot(s) | 1 | |
| Total Ballots | 2,620 | |

### Treasurer (Vote for 1)

|  | Votes | Percent |
|---|---|---|
| Patricia Kane | 1,285 | 50.9% |
| Miriam (Mimi) Gonzalez | 732 | 29.0% |
| Edmund J. Y. Pajarillo | 503 | 19.9% |
| write in only if different from listed candidates | 3 | 0.1% |
| Total Valid Ballots | 2,523 | |
| Unexercised Ballot(s) | 96 | |
| Invalid Ballot(s) | 1 | |
| Total Ballots | 2,620 | |

SBS DirectVote

**NEW YORK STATE NURSES ASSOCIATION**

**2011 ASSOCIATION-WIDE ELECTION**

**OFFICIAL RESULTS**

| Director at Large (Vote for 4) | Votes | Percent |
|---|---|---|
| Anthony M. Ciampa | 1,315 | 51.6% |
| Veronica Richardson | 1,222 | 48.0% |
| Grace J. Otto | 1,159 | 45.5% |
| Verginia Stewart | 1,089 | 42.8% |
| Barbara A. Crane | 883 | 34.7% |
| Eileen M. Dunn | 789 | 31.0% |
| Nathan Sull | 687 | 27.0% |
| Patricia Rochford | 569 | 22.3% |
| Elisa A. Mancuso | 464 | 18.2% |
| Anne Cardinale | 430 | 16.9% |
| Maria Flores-Costello | 421 | 16.5% |
| Tanya Drake | 305 | 12.0% |
| write in only if different from listed candidates | 22 | 0.9% |
| write in only if different from listed candidates | 5 | 0.2% |
| write in only if different from listed candidates | 3 | 0.1% |
| write in only if different from listed candidates | 1 | 0.0% |
| Total Valid Ballots | 2,546 | |
| Unexercised Ballot(s) | 71 | |
| Invalid Ballot(s) | 3 | |
| Total Ballots | 2,620 | |

 DirectVote®

**NEW YORK STATE NURSES ASSOCIATION**

**2011 ASSOCIATION-WIDE ELECTION**

**OFFICIAL RESULTS**

**Nominating Committee Central Region (Vote for 1)**

|  | Votes | Percent |
|---|---|---|
| Nancy Salerno | 599 | 36.9% |
| Susan M. Ryan | 518 | 31.9% |
| Mary Ellen Berg | 498 | 30.7% |
| write in only if different from listed candidates | 9 | 0.6% |
| | | |
| Total Valid Ballots | 1,624 | |
| Unexercised Ballot(s) | 989 | |
| Invalid Ballot(s) | 7 | |
| Total Ballots | 2,620 | |

**Nominating Committee Eastern Region (Vote for 1)**

|  | Votes | Percent |
|---|---|---|
| Estela Aquino-Woych | 1,588 | 98.9% |
| write in only if different from listed candidates | 17 | 1.1% |
| | | |
| Total Valid Ballots | 1,605 | |
| Unexercised Ballot(s) | 1,014 | |
| Invalid Ballot(s) | 1 | |
| Total Ballots | 2,620 | |

SBS DirectVote

**NEW YORK STATE NURSES ASSOCIATION**

**2011 ASSOCIATION-WIDE ELECTION**

**OFFICIAL RESULTS**

| Nominating Committee Southern Region (Vote for 1) | Votes | Percent |
|---|---|---|
| Ellen R. Mitchell | 895 | 52.7% |
| Bridget Christina Maybury | 790 | 46.5% |
| write in only if different from listed candidates | 14 | 0.8% |
| | | |
| Total Valid Ballots | 1,699 | |
| Unexercised Ballot(s) | 920 | |
| Invalid Ballot(s) | 1 | |
| Total Ballots | 2,620 | |

| Nominating Committee Southeastern Region (Vote for 1) | Votes | Percent |
|---|---|---|
| Jacqueline B. Gilbert | 1,021 | 45.7% |
| Joan Anderson | 408 | 18.3% |
| Kimberly Velez | 396 | 17.7% |
| Mary Bell-Downes | 299 | 13.4% |
| write in only if different from listed candidates | 109 | 4.9% |
| | | |
| Total Valid Ballots | 2,233 | |
| Unexercised Ballot(s) | 376 | |
| Invalid Ballot(s) | 11 | |
| Total Ballots | 2,620 | |

**NEW YORK STATE NURSES ASSOCIATION**

**2011 ASSOCIATION-WIDE ELECTION**

**OFFICIAL RESULTS**

| Nominating Committee Western Region (Vote for 1) | Votes | Percent |
|---|---|---|
| Barbara L. Vogel | 1,050 | 65.7% |
| Louise Amberger | 531 | 33.2% |
| write in only if different from listed candidates | 16 | 1.0% |
| | | |
| Total Valid Ballots | 1,597 | |
| Unexercised Ballot(s) | 1,023 | |
| Invalid Ballot(s) | 0 | |
| Total Ballots | 2,620 | |

DirectVote

# EXHIBIT E

Policy 3-8

*Election Protest Procedure*

Adopted:     June 11, 2008
Reviewed:
Revised:     August 27, 2008

## Election Committee

All protests from members concerning all aspects of the election process shall be heard and determined by the election committee. The election committee shall be composed of five members, three who shall be elected* to their positions for a three-year term, two who shall be appointed to their positions for a two-year term. Election Committee members may not be candidates for any position on the NYSNA slate while they are serving on the committee nor may they serve consecutive terms on the committee. Vacancies in elected positions on the Election Committee shall be filled by the Board of Directors. The Election Committee may consult with NYSNA staff and/or legal counsel, who may be present for the meetings. The committee will select its chair before proceeding with any business. A quorum of the Election Committee shall consist of three committee members and decisions shall be by majority vote. Executive office staff designated by the CEO will attend all Election Committee meetings and maintain minutes of all proceedings and correspondence after approval of the committee.

## Appeals Committee

An Appeals Committee shall consider appeals of all pre-election or post-election protests filed with the Election Committee as described below. The Appeals Committee shall consist of three impartial members of NYSNA. The Appeals Committee shall be appointed by the President and may consist of board members and members-at-large. Majority decisions of the Appeals Committee shall be final and binding. Executive office staff designated by the CEO will attend all Appeals Committee meetings and maintain minutes of all proceedings and correspondence after approval of the committee.

1.     **Pre-Election Protests**

Pre-election protests, including all protests to the election from nomination through the last day of polling, shall be processed in the following manner:

1

a) Protests must be filed within seventy-two (72) hours of the time the complainant knew or should have known of the events giving rise to the protest, or such protests shall be waived.

b) All pre-election protests shall be filed by sending to the Election Committee, (NYSNA, 11 Cornell Road, Latham, New York 12110 or via facsimile to 518-783-5207) a clear and concise written statement of the alleged improper conduct. Such statement shall be signed and include the name, address, telephone number, and e-mail address (if any) of the complainant. All protests shall be delivered to the Election Committee by personal delivery, overnight mail, facsimile transmission, or e-mail within the time limits set forth in paragraph (a) above.

c) The Election Committee shall investigate each protest and shall:
   i. determine the merits of the protest and, if found meritorious, determine the appropriate remedy; or
   ii. defer making a determination until after the election and thereby treat the matter as a post-election protest pursuant to Section 2 below, as if such protest was filed on the day election results are announced.

d) In the course of the Election Committee's investigation of the protest, the claimant(s) filing the protest may be interviewed in phone or in person by the Election Committee unless the protest is time-barred, clearly without merit, or otherwise impracticable or unnecessary. Any interview will be recorded by a tape recorder, and will be submitted to the Appeals Committee in the event an appeal from the Election Committees' Decision is filed.

e) The Election Committee shall issue a decision promptly setting forth the basis for the decision and the procedures and time limits that must be followed to appeal the decision, and shall notify the complainant and any candidate affected of the Committee's decision.

f) All decisions of the Election Committee concerning pre-election protests shall be effective immediately upon issuance. The complainant and any adversely affected candidate not satisfied with the decision of the Election Committee (including a decision to defer) concerning a pre-election protest may appeal that decision to the Appeals Committee no later than twenty-four (24) hours after receipt of the decision. Such appeal shall be made in writing and shall be delivered to the Appeals Committee and all other parties to the dispute by personal delivery, overnight mail, facsimile transmission, or e-mail within the time limits prescribed above, with a copy of the original protest attached. The Appeals Committee, in its discretion, may permit an appeal to be filed later than 24 hours upon a clear showing that the appeal could not have been filed within 24 hours.

g) Promptly after receipt of an appeal, the Appeals Committee shall investigate the matter and may choose to commence and conclude a hearing at a location and in a manner that the Appeals Committee determines most appropriate to fully elicit all

2

relevant facts and information necessary to determine the appeal. The Appeals Committee shall provide the following persons with timely notice and an opportunity to be heard at such hearing: the complainant; members of the Election Committee; the person filing the appeal (if other than the complainant), and any other person who obtains the permission of the Appeals Committee.  The Election Committee may designate staff and/or legal counsel to also submit evidence or attend such hearing.  At each such hearing, the Election Committee shall present to the Appeals Committee a summary of the original determination, including a statement of the facts found, the resolution reached and the basis for that resolution.

h)  Promptly after the conclusion of the investigation or hearing if one is commenced, the Appeals Committee shall issue a written decision, making relevant findings and ordering any appropriate relief to resolve the appeal.  The decision of the Appeals Committee is final and binding.

## 2.    Post-Election Protests

Post-election protests shall be processed in the following manner:

a)  Protests regarding any alleged improper election or post-election conduct or event must be filed within fifteen (15) days of the date of the announcement of the election results.

b)  Post-election protests shall be considered and remedied if it is determined that the alleged violation may have affected the outcome of the election.

c)  All post-election protests shall be filed by sending the Election Committee a clear and concise written statement of the alleged improper conduct, including a statement explaining how such conduct may have affected the outcome of the election. Such statement shall be signed and include the name, address, telephone number and e-mail address, (if any), of the complainant.  All protests shall be delivered to the Election Committee by personal delivery, overnight mail, facsimile transmission, or e-mail within the time limits prescribed by paragraph (a) above.

d)  Promptly after the filing of a protest, the Election Committee shall investigate the protest and, if found meritorious, determine the appropriate remedy. The Election Committee shall notify the complainant and any candidate affected of their decision in writing setting forth the basis for the decision and the procedures and time limits that must be followed to appeal the decision.

e)  In the course of the Election Committee's investigation of the protest, the complainant may be interviewed in phone or in person by the Election Committee unless the protest is time-barred, clearly without merit, or otherwise impracticable or unnecessary. Any interview will be recorded by a tape recorder, and will be submitted to the Appeals Committee in the event an appeal from the Election Committee's Decision is filed.

3

f)  All decisions of the Election Committee concerning post-election protests shall be effective immediately upon issuance. The complainant or any adversely affected candidate not satisfied with the decision of the Election Committee concerning a post-election protest may appeal to the Appeals Committee not later than seventy-two (72) hours after receipt of the Election Committee's decision. Such appeal shall be made in writing and shall be delivered to the Appeals Committee and to all other parties to the dispute by personal delivery, overnight mail, facsimile transmission, or e-mail within seventy-two (72) hours as prescribed above, with a copy of the original protest attached. The Appeals Committee, in their discretion, may permit an appeal to be filed later than 72 hours upon a clear showing of good cause why the appeal could not be filed within 72 hours.

g)  Promptly after receipt of a timely appeal, the Appeals Committee shall investigate the matter and in its discretion may determine to commence and conclude a hearing at a location and in a manner that the Appeals Committee determines most appropriate to fully elicit all relevant facts and information necessary to determine the appeal. The Appeals Committee shall provide the following persons with timely notice at least ten (10) days in advance of any hearing date and an opportunity to be heard at such hearing: the complainants; the Election Committee; the person filing the appeal, if other than the complainant; and any other person who obtains the permission of the Appeals Committee. At each such hearing, the Election Committee, and any advisors it designates shall present to the Appeals Committee a summary of the original determination, including a statement of the facts found, the resolution reached and the basis for that resolution.  The complainant filing the protest and all other candidates for office subject to challenge shall have the right to appear at the hearing and to be represented at the hearing by any member in good standing.

h)  Promptly after the conclusion of the investigation or hearing if one is commenced, and no later than thirty (30) days from the date the hearing closed, the Appeals Committee shall issue a written decision, making relevant findings and ordering any appropriate relief to resolve the appeal.  The decision of the Appeals Committee is final and binding.

*Proviso:  Election of Election Committee members will take place during the 2009 NYSNA association-wide election.  If there is a need for an election committee prior to the announcement of the 2009 election results, the full five member committee will be appointed by the board of directors for a term limited to the completion of the process to hear the specific appeal in question and make a final determination.

3.     **Remedies**

If as a result of any timely protest filed, or any investigation undertaken by the Election Committee without regard to whether a timely protest has been filed, the Election

Committee or Appeals Committee determines that any NYSNA election rules have been violated or that any other conduct has occurred which may prevent or has prevented a <u>fair</u>, honest and open election, the Election Committee or Appeals Committee, as applicable, may take whatever remedial action is appropriate.

These remedies are in addition to, and not in lieu of, the remedies that may be appropriately imposed following charges brought under the NYSNA Disciplinary Procedure.

**4.     Rerun Elections**

Should the Election Committee or the Appeals Committee if an appeal to the Election Committee's decision is filed, refuse to certify any election, the Election Committee or Appeal Committee, as applicable, shall immediately order that a rerun election be held, including, if necessary, the rerunning of the nomination process.  Upon receipt of the decision from the Election Committee or the Appeals Committee, the CEO will implement the rerun election as soon as feasibly possible.  Rerun nominations and/or elections shall be conducted and administered by the Election Committee.

5

# EXHIBIT F

INTERIM REPORT OF THE NYSNA ELECTION COMMITTEE
WITH RESPECT TO THE 2011 ELECTION
September 16, 2011

The Election Committee of the New York State Nurses Association ("Election Committee") was established under the authority of the NYSNA Board of Director's ("Board") Policy 3-8 (Adopted June 11, 2008 & Revised August 27, 2008). The Board has directed that "[a]ll protests from members concerning all aspects of the election process shall be heard and determined by the election committee." Board Policy 3-8 at page 1.

The Board has also provided for the following with respect to any remedies:

3. Remedies

If as a result of any timely protest filed, or any investigation undertaken by the Election Committee without regard to whether a timely protest has been filed, the Election Committee or Appeals Committee determines that any NYSNA election rules have been violated or that any other conduct has occurred which may prevent or has prevented a fair; honest and open election. The Election Committee or Appeals Committee, as applicable, may take whatever remedial action is appropriate.

These remedies are in addition to, and not in lieu of, the remedies that may be appropriately imposed following charges brought under the NYSNA Disciplinary Procedure.

4. Rerun Elections

Should the Election Committee or the Appeals Committee if an appeal to the Election Committee's decision is filed, refuse to certify any election, the Election Committee or Appeal Committee, as applicable, shall immediately order that a rerun election be held, including, if necessary, the rerunning of the nomination process. Upon receipt of the decision from the Election Committee or the Appeals Committee, the CEO will implement the rerun election as soon as feasibly possible. Rerun nominations and/or elections shall be conducted and administered by the Election Committee.

Board Policy 3-8 at pages 4-5.

To date, the Election Committee has met three times totaling more than 12 hours to consider over 40 separately cognizable protests filed by over 130 members. The Election Committee is continuing to conduct its investigation of protests and is seeking additional information with respect to certain protests from protesters and witnesses. The next meeting of the Election Committee is scheduled for October 14, 2011 at NYSNA's Latham, NY offices.

The Election Committee, with the exception of the election for one office discussed below, is presently neither able to certify any election nor able to refuse to certify any election and order a rerun election because the Committee's investigations of protests are ongoing and have yet to be concluded.

The one exception to the status of the Election Committee's ongoing investigations is the following. The Election Committee will not, because it cannot, certify the election for the office of president-elect because that office is for a four-year term under NYSNA Bylaws Article V, Section 3(a). The Office of Labor Management Standards of the United States Department of Labor notified NYSNA by letter dated August 19, 2011 (received August 22, 2011) that NYSNA is in violation of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") because that federal agency has "determined that NYSNA is a local labor organization as it has the structure of and performs the functions of a local and it does not have any subordinate labor organizations. It is the closest entity to the members and is thus a local." The Election Committee has received protests from members about this very issue, i.e., that the president-elect position with a four-year term is a violation of the LMRDA's requirement that a local labor organization must provide for the secret ballot election by the members for any office at least every three-years. The Election Committee therefore refuses to certify the election for the office of president-elect and is referring this matter to the Board for its review and action on amending the Bylaws so that they conform to the election term requirements of the LMRDA. Following action by the Board and the membership in amending the Bylaws to conform to the requirements of the LMRDA, the Election Committee will review this matter, including the ordering of the rerunning of the nomination process and a new election or the rerunning of the election.

Respectfully submitted,

Robert Warner, MS, RN, Chairperson
Lukmon Kalejaiye, MS, RN-BC, CNS
Monica King, MPH, RN
Ellen LaDieu, MS, RN
Patricia Matthews, MSN, RN

- 2 -

# EXHIBIT G

**U.S. Department of Labor**      Office of Labor-Management Standards
Buffalo District Office
130 South Elmwood Avenue. Suite 510
Buffalo. NY 14202-2465
Telephone: (716) 842-2915
Facsimile: (716) 842-2901
E-mail: wasikjr.joseph@dol.gov
Website:   www.olms.dol.gov



**RECEIVED**

August 19, 2011

AUG 2 2 2011

**BY NYSNA**

Tina Gerardi, Chief Executive Officer
NYSNA
11 Cornell Road
Latham, NY 12110-1499

Re: LM 038-970

Dear Ms. Gerardi:

In order to properly file its annual financial reports with the Office of Labor-Management
Standards (OLMS), your union sought guidance from OLMS regarding its organizational status
under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA).  Part of the
inquiry was made because the New York State Nurses Association (NYSNA) was listed as an
affiliate of the National Federation Nurses (NFN) by OLMS.  NYSNA maintains that they are
not subordinate to the NFN as the NFN is federation of various state nurses unions.  NYSNA
also has an affiliation with the American Nurses Association (ANA).

OLMS examined the organizational status of NYSNA on several fronts.  First, we have
determined that NYSNA is a local labor organization as it has the structure of and performs the
functions of a local and it does not have any subordinate labor organizations.  It is the closet
entity to the members and it is thus a local.

OLMS also determined that NYSNA should report that they are an affiliate of ANA, an LMRDA
covered national union on their filings with OLMS.  It is noted that the ANA on their website
states that NYSNA is affiliated with ANA and that they are, like all ANA state nurses
associations, is subordinate to ANA.  Additionally, the ANA bylaws state that "constituent
member associations," such as state nurses associations must have articles of incorporation or
constitution and bylaws that govern its individual members and regulate its affairs that are
harmonious with the ANA bylaws, and they must have stated and demonstrated purposes and
functions congruent with those of the ANA. For example, NYSNA members are subject to
disciplinary actions for violation of the ANA Code of Nurses.

2

If you have any questions regarding our determination, please feel free to contact me. I am enclosing materials that were used by OLMS in making our determination for your reference. I would also direct you to our website (www.olms.dol.gov) for additional information as well. We also relied on the ANA and the NYSNA constitution and bylaws.


Sincerely,


Joseph S. Wasik
District Director

Enclosures

CC:   John Barrett, Chief Financial Officer, NYSNA
      Liz Orfan, Attorney

# EXHIBIT H

# SPIVAK LIPTON LLP
## ATTORNEYS AT LAW

Elizabeth Orfan
eorfan@spivaklipton.com

1700 Broadway
New York, NY 10019
T 212.765.2100
F 212.765.8954
spivaklipton.com



September 1, 2011

Tina Gerardi, Chief Executive Officer
NYSNA
11 Cornell Road
Latham, NY 12110-1499

> **Re:    U.S. Department of Labor - Office of Labor-Management Standards**
> **LM 038-970**
> **(August 19, 2011 Letter to NYSNA)**

Dear Tina:

As we discussed, I followed up with respect to the letter dated August 19, 2011 sent to NYSNA by the Office of Labor-Management Standards - Buffalo District Office (OLMS) in which OLMS states that it has determined that NYSNA is a local labor organization. OLMS also determined that NYSNA should report that it is an affiliate of the ANA, an LMRDA covered national union, on their filings with OLMS.

As you know, prior to NYSNA's receipt of the August 19 letter, at NYSNA's request, I contacted the Buffalo District Office of OLMS to follow up concerning NYSNA's LM-2 filing status. John Barrett, NYSNA's CFO, had reported to you and to me that Marla Tumiel, an employee of OLMS in Buffalo, informed him that OLMS had determined that NYSNA should report that it is a local and not a national union. I then contacted Ms. Tumiel directly. She informed me that OLMS had initiated an investigation into NYSNA's status on its own and that OLMS had determined that NYSNA was a local. Ms. Tumiel stated that if an election challenge is lodged, based upon the conclusion of OLMS that NYSNA is a local and not a national labor organization, the determination of OLMS pursuant to any election complaint would be a "no brainer."

Thereafter NYSNA received the August 19 letter and I followed up by contacting both ANA General Counsel Alice Bodley, and OLMS District Director Joseph S. Wasik, the author of the August 19 letter.

Alice Bodley confirmed that ANA continues to file LM-2 forms as a labor organization. She noted that collective bargaining certifications for all NYSNA represented employees are in NYSNA's name alone. She stated that she was unsure how the DOL had determined that NYSNA, like all ANA state nurses associations, was "subordinate" to the ANA.

New York • Los Angeles

**SPIVAK LIPTON**LLP
ATTORNEYS AT LAW

Tina Gerardi
September 1, 2011
Page 2

I next spoke with OLMS District Director Joseph Wasik regarding the content of his August 19, 2011 letter. Mr. Wasik told me that OLMS's Buffalo office had worked with the DOL's OLMS office in Washington, DC in determining that NYSNA was a local and not a national labor organization. He told me that the first and most important finding that caused OLMS to determine that NYSNA is a local labor organization, as stated in the August 19 letter, is NYSNA's structure. NYSNA performs the functions of a local and does not have any subordinate labor organizations. He also said NYSNA is the closest entity to the members. As such, he concluded, NYSNA is a local.

Mr. Wasik continued by stating that NYSNA's bylaws permit an officer to serve a four year term. He explained that because OLMS considers NYSNA a local, under the law, no term of office may exceed three years. Mr. Wasik also stated that OLMS will not take any action with respect to its findings unless an election protest is filed with his office. If an election protest is filed with his office, the Buffalo office of the OLMS, along with OLMS's Washington, DC office will formally investigate the protest and make a decision.

I asked Mr. Wasik a number of questions, including, for example, whether OLMS had carefully considered the ANA's structure, the fact that NYSNA represents nurses in two states, and that the ANA had not "chartered" NYSNA and could not put NYSNA under trusteeship. He responded that while NYSNA's relationship to the ANA and the NFN had been reviewed, those relationships and the sampling of issues I brought up on the phone would not affect OLMS's findings. The key to OLMS's finding that NYSNA was a local, Mr. Wasik repeated, was the fact that there were no labor organizations subordinate to NYSNA and NYSNA was the closest entity to the members.

I asked if NYSNA could file a response in the nature of an appeal of OLMS's decision. Mr. Wasik said NYSNA could file anything it wishes and OLMS would look at it but that NYSNA must understand that the lack of subordinate organizations to NYSNA was the most important reason that OLMS found NYSNA to be a local.

Please provide to NYSNA's Board of Directors and to NYSNA's Election Committee copies of the August 19, 2011 letter issued by OLMS and this follow up letter. Please let me know if you require further information or guidance in this matter.

Very truly yours,

Elizabeth Orfan

New York · Los Angeles

# EXHIBIT I

Case 1:11-cv-06563-RJS   Document 14   Filed 09/26/11   Page 57 of 57





# Pending Final Election Outcome, Current NYSNA Board of Directors to Remain in Place

### Election committee continues its work evaluating election challenges

LATHAM, N.Y., Sept. 25, 2011 /PRNewswire-USNewswire/ -- As the New York State Nurses Association closed its convention Sunday, the current board of directors, with the exception of Karen Ballard, who has finished her term as president, will continue to serve the association until there are certified results of the association's 2011 election of officers.

This year's election resulted in more than 40 election protests filed by more than 130 members, and the election committee has not finished its work. The election committee, which is made up of five NYSNA members, is next scheduled to meet and continue its work on October 14.

Until the election committee and, if necessary, the appeals committee have completed their work and there is a final election result, the current board will remain in place. The board as it is currently constituted consists of Winifred Z. Kennedy, president; Judy Sheridan-Gonzalez, vice president; Mary J. Finnin, secretary; J. Howard Doughty, treasurer; Anne Bove; Sam Caquias; Eileen Dunn; Shirley Hunter; Miriam Gonzalez; Patricia Kane; Elizabeth Mahoney; and José Mapalad Planillo.

While the election process continues, the normal operations of the association, including all programmatic services provided by NYSNA to its members and all representational services provided to members represented for collective bargaining will continue as usual.

*The New York State Nurses Association is the voice for nursing in the Empire State. With more than 37,000 members, it is New York's largest professional association and union for registered nurses. The association represents registered nurses, and some all-professional bargaining units, in New York and New Jersey. It supports nurses and nursing practice through education, research, legislative advocacy, and collective bargaining.*

SOURCE New York State Nurses Association

### Back to top
RELATED LINKS
http://www.nysna.org

**Find this article at:**
http://www.prnewswire.com/news-releases/pending-final-election-outcome-current-nysna-board-of-directors-to-remain-in-place-130528313.html

☐ Check the box to include the list of links referenced in the article.